William E. Peterson, No. 1528
Suellen Fulstone, No. 1615
SNELL & WILMER L.L.P.
50 West Liberty Street, Suite 510
Reno, Nevada 89501
Telephone: (775) 785-5440
Facsimile: (775) 785-5441
Email: wpeterson@swlaw.com
       sfulstone@swlaw.com

Betty G. Brooks (*pro hac vice admission pending*)
Office of General Counsel
FINRA, Inc.
1735 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 728-8288
Facsimile: (202) 728-8894
Email: betty.brooks@finra.org

Attorneys for defendant
Financial Industry Regulatory Authority, Inc.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BANCORP INTERNATIONAL GROUP, a Nevada corporation; DOUGLAS R. CARON, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., a Nevada corporation; DEPOSITORY TRUST COMPANY, a New York Limited Purpose Trust Company; DEPOSITORY TRUST AND CLEARING CORPORATION, a New York corporation; NATIONAL SECURITIES CLEARING CORPORATION, a foreign corporation; FIXED INCOME CLEARING CORPORATION, a foreign corporation; et al.,<br><br>Defendants. | Case No. 3:13-cv-00170-RCJ-WGC<br><br>**MOTION TO DISMISS** |

Defendant Financial Industry Regulatory Authority, Inc. (FINRA), a Delaware corporation erroneously identified by Plaintiffs as a Nevada corporation, moves the Court in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in

- 1 -

this matter. This motion is made on the grounds that FINRA enjoys absolute immunity under the law from all of the Plaintiffs' claims, that no private right of action is created under the federal securities laws that govern this action, that Plaintiffs' claims are barred by the applicable statutes of limitation, and that the Plaintiffs have failed to exhaust their administrative remedies. This motion is based on the Plaintiffs' complaint and supported by the memorandum of points and authorities which follows.

Dated: April 29, 2013

SNELL & WILMER L.L.P.

By: _____
William E. Peterson, No. 1528
Suellen Fulstone, No. 1615
50 W. Liberty Street, Suite 510
Reno, Nevada 89501

Betty G. Brooks (pro hac vice admission pending)
Office of General Counsel
FINRA, Inc.
1735 K Street, N.W.
Washington, D.C. 20006

Attorneys for defendant
Financial Industry Regulatory Authority, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES
# IN SUPPORT OF MOTION TO DISMISS

## I.   SUMMARY OF ARGUMENT

The Financial Industry Regulatory Authority, Inc. ("FINRA") is a self-regulatory organization ("SRO") pursuant to the Securities Exchange Act of 1934 ("Exchange Act") and is a crucial part of the detailed system established by Congress for regulating the securities markets. Plaintiffs' suit strikes at the heart of that system and seeks monetary damages from FINRA because of actions FINRA allegedly did or did not take in discharging its regulatory responsibilities. Specifically, Plaintiffs' suit challenges FINRA's regulatory decision(s) *not* to make certain announcements to all of its members regarding Bancorp International Group, ("BCIT") certificates and the decision to remove BCIT on November 7, 2006 from the Over-the-Counter Bulletin Board ("OTCBB") for failure to quote or trade for 4 consecutive trading days.[1] Such a suit is barred by no fewer than four legal doctrines and therefore must be dismissed.

First, FINRA, because it is an SRO, is absolutely immune from suits related to its regulatory activities. The absolute immunity of SROs is the settled law of this Circuit. *Partnership Exch. Sec. Co. v. NASD*, 169 F. 3d 606 (9th Cir. 1999); *Sparta Surgical Corporation v. NASD*, 159 F. 3d 1209 (9th Cir. 1998).[2] Because monitoring traded securities and overseeing the fair and orderly operation of the market stand at the core of FINRA's regulatory duties, Plaintiffs' suit is squarely barred by FINRA's absolute immunity and must be dismissed.

Second, FINRA is a national securities association pursuant to Section 15A of the Exchange Act. The Exchange Act does not provide for a private cause of action against FINRA for violation of securities association rules or of the Exchange Act. *See Sparta*, 159 F. 3d at 1211 and *Jablon v. Dean Witter & Co.*, 614 F. 2d 677, 681 (9th Cir. 1980).

Third, even if Plaintiffs' "state law" claims were not barred under the doctrines of

---

[1]   The securities at issue in this case were traded on the Over-the-Counter Bulletin Board. The OTCBB is a regulated electronic market for over-the-counter equity securities.

[2]   FINRA was formerly known as the National Association of Securities Dealers, Inc. ("NASD"). On July 30, 2007, NASD acquired the member regulation, enforcement and arbitration operations of NYSE and changed its name to FINRA.

complete pre-emption and immunity, all of those claims are time-barred under Nevada state law. The operative date as alleged by Plaintiffs is November 7, 2006, more than six complete years earlier than the March 2013 date of the complaint. Plaintiffs' complaint asserts various common law and statutory torts with various statutes of limitations under state law, the longest of which is four years.

Fourth, Plaintiffs must exhaust their administrative remedies before the SEC. This requirement is crucial to the comprehensive regulatory system established by the Exchange Act, because Congress has designated the SEC as the entity to enforce the securities laws and rules against SROs. Plaintiffs' suit is an invalid attempt to circumvent this requirement and to deprive courts of the specialized expertise that the SEC can bring to resolving these matters. Courts have not tolerated these attempts. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 616 F. 2d 1363, 1370 (5th Cir. 1980); *Touche Ross & Co. v. SEC*, 609 F. 2d 570, 574 (2d Cir. 1979); *Datek Securities Corp. v. NASD*, 875 F. Supp. 230, 233 (S.D.N.Y. 1995) The complaint must be dismissed on this ground as well.

## II. BACKGROUND

### A. FINRA And The Comprehensive System Established By Congress For Regulating The Securities Markets.

FINRA is an SRO registered with the SEC as a national securities association pursuant to the 1938 Maloney Act Amendments, 15 U.S.C. § 78o-3 *et seq.*, to the Exchange Act. As an SRO, FINRA is part of the Exchange Act's highly interrelated and fully comprehensive mechanism for regulating the securities markets.

FINRA is required to comply with the Exchange Act, SEC rules, and its own rules adopted through the SEC's comprehensive oversight process. 15 U.S.C. § 78s(g). Congress has designated the SEC as the entity that will enforce the Exchange Act, SEC rules, and FINRA rules against FINRA. The SEC may suspend or revoke FINRA's registration, may limit FINRA's activities, functions, or operations, may censure FINRA or any of its officers or directors, and may remove any FINRA officer or director from office. 15 U.S.C. §§ 78s(c), (h)(1), (h)(4). In addition, Congress has authorized the SEC to enjoin any FINRA activity that would violate the

1  Exchange Act or FINRA's rules and to seek civil penalties against violators. *See* 15 U.S.C. §§
2  78u(d)(l), (d)(3)(a).

3  The securities at issue in this case were quoted on the OTCBB. The OTCBB is a
4  regulated electronic market for over-the-counter equity securities. *See NASD Manual at* Rule
5  6520. Subscribing members can utilize the OTCBB "to enter, update, and display their
6  proprietary quotations in individual securities on a real-time basis." *Id*. Companies that want to
7  have their securities quoted on the OTCBB must file current financial reports with the SEC or
8  with their banking or insurance regulators. NASD Manual at Rule 6530 (e)(1)(A).

9  FINRA acts under the close supervision of the SEC. With a few exceptions not relevant
10 here, the SEC must approve all FINRA rules, policies, practices, and interpretations before they
11 are implemented. *See* 15 U.S. C. § 78s(b). At any time, the Commission may "abrogate, add to,
12 [or] delete from" the rules of FINRA. 15 U.S.C. § 78s(c).

13 Congress also has placed substantive limits on the rules that FINRA may adopt. For
14 example, FINRA may not adopt a "rule or regulation which would impose a burden on
15 competition not necessary or appropriate in furtherance of the purposes" of the Exchange Act,
16 and the SEC must consider the effects on competition of any rules or regulations proposed by
17 FINRA before approving those rules. 15 U.S. C. §§ 78w(a)(2), 78f(b)(8), 78o-3(b)(9).

18 Pursuant to the approval of the SEC under the Exchange Act, FINRA has adopted
19 The Uniform Practice Code (the "UPC"). *See, e.g.*, SEC Release 34-29687, *National Association*
20 *of Securities Dealers, Inc., Order Approving a Proposed Rule Change Relating to Amendments to*
21 *the Uniform Practice Code*, 56 Fed. Reg. 47819 (Sept. 20, 1991).[3] The UPC prescribes the rules
22 and procedures which FINRA employs to regulate the conduct and handling of over-the counter
23 securities transactions. This includes regulation of the delivery, settlement date, and ex-dividend
24 date of securities, as well as other company actions under Securities Exchange Act Rule 10b-17
25 including, but not limited to, other company control transactions. If definitive information is not

---

[3] This citation is to the Uniform Practice Code that was in place during the events alleged in the Complaint. For UPC rule in effect during relevant period, *See NASD Manual* (CCH 2004), Rule 11000 Series.

provided with the submission, additional information may be requested. NASD Rule 11140 (c), (d), (e) and SEC Rule 106-17. The scope of the UPC with regard to securities that trade on markets regulated by FINRA is comprehensive. As the UPC states, it covers "[a]ll over the counter secondary market transactions in securities (including restricted securities ... ) between members, including the rights and liabilities of the members participating in the transaction, and those operational procedures that affect the day-to-day business of members." UPC Rule 11100(a).

In this case, Plaintiffs appear to challenge FINRA's regulatory decision to *not* make certain announcements to all of its members regarding BCIT's certificates and FINRA's alleged error when it did again allow trading in BCIT shares for 30 minutes on November 7, 2006, but removed it from the OTCBB after BCIT went unquoted/untraded for 4 consecutive trading days.

UPC Rule 11140 requires the issuer to inform the NASD (now FINRA) of the intended record dates for a dividend payment or the issuance of rights or warrants. UPC Rule 11140 (c) (d) and (e) provide procedures for NASD (now FINRA) to set "ex-dividend," "ex-rights" or "ex-warrants" dates.[4] By the terms of these rules "definitive information" is to be provided by the issuer to FINRA. FINRA is responsible for the regulation of the OTCBB, which FINRA owns

---

[4] According to Rule 11140:

    **(c)    Late Information Re: Ex-Dividend, Ex-Warrants Dates**

    If definitive information is not received sufficiently in advance of the record date to permit designation of an ex-dividend or ex-warrants date in accordance with paragraph 9b)(1) hereof, the date designated shall be first business day which, in the opinion of the Committee, shall be practical having regard to the circumstances pertaining.

    **(d)    Normal Ex-Rights Dates**

    In respect to transferable rights subscription offerings, if definitive information is received sufficiently in advance of the effective date of the registration statement, the date designated as the ex-rights date shall be the first business day after the effective date of the registration statement.

    **(e)    Late Information Re: Ex-Rights**

    If definitive information is not received sufficiently in advance of the effective date of the registration statement to permit designation of an ex-rights dates in accordance with the paragraph (d) hereof, the date designated shall be the first business day which in the opinion of the Committee shall be practical having regard to the circumstances pertaining. UPC Rule 11140.

and operates. *See American Benefits Group, Inc. v. NASD*, No. 99 CIV 4733 JGK, 1999 WL 605246, at *2 (S.D.N.Y. Aug. 10, 1999).

### B. Plaintiffs' Suit Against FINRA.

Plaintiffs' suit challenges FINRA's regulatory decisions *not* to make an announcement that there had been a change in the CUSIP number assigned to Bancorp International Group's ("BCIT") stock certificates and the decision to remove BCIT on November 7, 2006 from the OTCBB for failure to quote or trade for 4 consecutive trading days.[5]

According to the complaint, in 2005, BCIT was the victim of corporate identity theft with 41 unauthorized stock certificates issued between May and August 2005, representing approximately 245,000,000 shares of BCIT, allegedly illegally entered the market place. Comp. ¶ 21. Plaintiff alleges that there was a huge unexplained increase in trading volume and that the Depository Trust and Clearing Corporation ("DTCC") suspended clearing services for BCIT on August 11, 2005. Comp. ¶¶ 22-23. On August 31, 2005, the SEC announced a temporary suspension of trading in BCIT's shares, which lasted until September 14, 2005. Comp. ¶ 26.

BCIT then was involved in litigation that resulted in a settlement agreement after which BCIT requested a new CUSIP number for its stock certificates. Comp. ¶¶ 27-28. Plaintiffs contend that, after this assignment of a new CUSIP number, FINRA should have announced this change to all of its members and to "DTCC". Comp. ¶ 39(d).

Plaintiffs' complaint challenges FINRA's regulatory decisions under which it did not make an announcement that there had been a change in the CUSIP number assigned to BCIT stock certificates and BCIT's removal from OTCBB when it failed to comply with the listing standards. Comp. ¶ 39(d)(e)(f) (g) and (j).

### III. ARGUMENT

#### A. FINRA Is Absolutely Immune For Its Regulatory Actions.

The Ninth Circuit – like every other federal court to rule on the question – has held that an SRO, such as FINRA, is absolutely immune for conduct within the scope of its regulatory and

---

[5] In addition to challenging FINRA's regulatory authority, Plaintiffs' complaint alleges causes of action against DTCC as well as three subsidiaries of DTCC.

general oversight functions. *Partnership Exch. Sec. Co. v. NASD*, 169 F. 3d 606, 608 (9th Cir. 1999) (holding that the NASD was protected by absolute immunity for its conduct "under the aegis of the Exchange Act's delegated authority" (internal quotation marks omitted)); *Sparta Surgical Corp. v. National Association of Securities Dealers, Inc.*, 159 F. 3d 1209, 1214-15 (9th Cir. 1998); *see also D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir.), *cert. denied*, 534 U.S. 1066 (2001); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Securities Dealers, Inc.*, 637 F. 3d 112, 115 (2d Cir. 2011)(per curiam), *cert. denied*, ___ U.S.___, 132 S. Ct. 1093 (2012); *Dexter v. Depository Trust & Clearing Corp.*, 219 Fed. Apx 91 (2d Cir. March 6, 2007), *summarily aff'd* 406 F. Supp. 2d 260 (S.D.N.Y. 2005); *D. L. Capital Grp., LLC v. Nasdaq Stock Market, Inc.*, 409 F. 3d 93, 97 (2d Cir. 2005); *Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 58 (2d Cir. 1996) (holding that the New York Stock Exchange, another SRO, is "absolutely immune from damages claims arising out of the performance of its federally-mandated conduct of disciplinary proceedings"); *Austin Mun. Sec., Inc. v. National Association of Securities Dealers, Inc.*, 757 F. 2d 676, 692 (5th Cir. 1985); ; *American Benefits Group, Inc. v. NASD*, No. 99 CIV 4733 JGK, 1999 WL 605246, at *8 (S.D.N.Y. Aug. 10, 1999).

In *American Benefits Group, Inc., supra*, the Court was reviewing an NASD rule change that created reporting requirements for companies included on the OTCBB. 1999 WL 605246, at *8. The decision dismissed claims against the NASD finding that "the NASD is entitled to absolute immunity when exercising its authority within the scope of its official duties." *Id*. The scope of this immunity is broad and without exception. As the Ninth Circuit explained in *Sparta, supra*, an SRO is entitled to immunity from suit when it engages in conduct consistent with the quasi-governmental powers delegated to it pursuant to the Exchange Act. 159 F. 3d at 1215. "NASD is charged with the duty and responsibility of monitoring its market carefully to protect the investing public." *Id*. at 1217. The immunity of SROs from suits arising from the execution of their regulatory functions is a necessity of the highly reticulated system that Congress established for regulating the securities markets.

Under that system, Congress and the SEC delegated significant responsibility for regulation of the securities markets to SROs, such as FINRA, under the supervision of the SEC.

Instead of allocating all regulatory responsibilities to the SEC, Congress opted in the Exchange Act to develop a system of "cooperative regulation" in which private SROs would establish rules and standards of conduct for market participants and would enforce those rules, with all of their actions subject to the ultimate approval of the SEC. *See Barbara, supra,* 99 F. 3d at 59. In this way, SROs such as FINRA "perform a variety of regulatory functions that would, in other circumstances, be performed by [the SEC]." *Sparta, supra,* 159 F. 3d at 1215 (quoting *Barbara,* 99 F. 3d at 59).

Accordingly, FINRA "stands in the shoes of the SEC" in the execution of these regulatory responsibilities. *D'Alessio, supra,* 258 F. 3d at 105. Because the SEC would enjoy absolute immunity from suit for conducting those regulatory responsibilities, federal courts, including the Ninth Circuit, uniformly have extended that immunity to SROs when executing regulatory obligations delegated from the SEC. *See D'Alessio, supra,* 258 F. 3d at 105 ("It follows that [an SRO] should be entitled to the same immunity enjoyed by the SEC when it is performing functions delegated to it under the SEC's broad oversight authority"). It is crucial not only that an SRO have such immunity, but that it be "absolute," and not merely dependent on whether the SRO acted in good faith as with "qualified" immunity, in order to protect the SRO from recriminatory litigation and to ensure that the public interest in efficient regulation is not disrupted by private litigation. *Barbara, supra,* 99 F. 3d at 58. FINRA's absolute immunity from suit for its regulatory determinations is reinforced by Congress's designation of the SEC, rather than private litigants, as the entity to enforce the securities laws, SEC rules, and FINRA's own rules against FINRA and its subsidiaries. *Sparta, supra,* 159 F.3d at 1214-15.

SROs that administer the national securities markets undertake a heavy burden for the government in the regulation of the securities markets. "…when Congress elected 'cooperative regulation' as the primary means of regulating the over-the-counter market, the consequence was that self-regulatory organizations had to enjoy freedom from civil liability when they acted in their regulatory capacity." *Sparta, supra,* 159 F.3d at 1219. FINRA is immune from suits that challenge its actions in regulating stock markets.

The complaint in this case falls squarely within the role of absolute immunity just as the complaint in *Dexter, supra.* In *Dexter*, a shareholder of a previously traded company brought an action alleging, similarly to the allegations here, that NASD and DTC acted in bad faith to protect and profit from the interests of its members when it made erroneous regulatory decisions setting the ex-dividend date for the distribution of proceeds from a litigation trust. *Dexter*, 406 F. Supp. 2d at 262. The Court found that the NASD was following certain Uniform Practice Code rules, also at issue in this complaint, which had been approved by the SEC, and that "NASD's decision to authorize (or not authorize) trading in certain securities is a core regulatory function that is covered by absolute immunity." *Dexter*, 406 F. Supp. 2d at 263 *citing, Sparta, supra,* 159 F. 3d at 1215. The Court explained that absolute immunity is to protect all conduct of an SRO from liability, so long as the conduct "arises out of the discharge of its duties under the Exchange Act." *Id., citing, D'Alessio, supra,* 258 F. 3d at 104. Therefore, even if NASD's conduct was incorrect and unlawful it is nevertheless protected. *Id.* The motivation in discharging its duties is irrelevant to the applicability of absolute immunity. *Id., citing, Bernard v. County of Suffolk,* 356 F. 3d 495, 502 (2d Cir. 2004).

Just as in *Dexter*, no matter how badly FINRA is alleged to have been motivated, inept, or even unlawful in its actions, FINRA is absolutely immune from suit because it was engaged in regulatory duties under the Exchange Act.

According to Plaintiffs, FINRA's regulatory decisions *not* to make announcements to the OTCBB market of certain company control transactions including a change in CUSIP numbers were wrong and FINRA should have made these announcements. This is precisely the type of regulatory decision that must be protected by absolute immunity, lest such regulatory decisions be chilled by the threat of recriminatory litigation from those aggrieved by the decisions.

Plaintiffs' other assertions are also barred by FINRA's absolute immunity. For example, Plaintiffs' claim that FINRA improperly delisted BCIT's stock after it was not quoted or traded for four consecutive days (Comp. ¶ 39(j)) is clearly also a regulatory decision protected by absolute immunity.

Any contention that FINRA acted in bad faith does not affect its immunity. Any claims

by Plaintiffs of bad faith and negligence cannot serve to lift the absolute immunity of FINRA. *Sparta*, 159 F.3d at 1215 (rejecting any "'bad faith' exception" to Nasdaq's absolute immunity for its regulatory actions); *DL Capital Group LLC v. The Nasdaq Stock Market, Inc.*, 409 F. 3d 93, 97 (2d Cir. 2005). *Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.* 2 F. Supp. 2d 516 (S.D.N.Y 1998); and *American Benefits Group Inc. v. NASD*, No. 99 CIV 4733 JGK, 1999 WL 605246 at *6 (S.D.N.Y. Aug. 10, 1999).

Plaintiffs' complaint is squarely barred by the absolute immunity of FINRA and must be dismissed in its entirety as a matter of law.

### B.  Plaintiffs Have No Private Right of Action Against FINRA for Violation of FINRA Rules or of the Exchange Act.

A separate ground requiring dismissal of Plaintiffs' claims against FINRA – and a corollary to both of the well-established doctrines of absolute immunity and exhaustion of administrative remedies – is that there is no express or implied private right of action to sue SROs under the Exchange Act or the rules adopted under that Act.

FINRA is a national securities association approved by the SEC pursuant to the Exchange Act to regulate its members under close SEC oversight. As such, it is governed by Section 15A of the Exchange Act, 15 U.S.C. § 78o-3, which provides for the registration and regulation of national securities associations. *In re National Ass'n of Sec. Dealers, Inc.*, 5 S.E.C. 627 (Aug. 7, 1939). Enforcement of Section 15A is provided for in Section 19(g) of the Exchange Act, which states that SROs "shall comply ... and ... absent reasonable justification or excuse enforce compliance" with their own rules, the Exchange Act, and the rules and regulations promulgated thereunder. 15 U.S.C. § 78s(g)(1).

Neither Section 19(g) nor Section 15A of the Exchange Act, nor any other provision of the federal securities laws expressly provides for a cause of action against a SRO for misconduct in connection with the regulation of its member firms. Instead, under the comprehensive regulatory scheme for the securities industry that was established by Congress, FINRA's performance of its responsibilities is subject to the strict, on-going oversight of the SEC. *See* 15 U.S.C. §§ 78o-3 *et seq.* With only limited exceptions, FINRA must file proposed rules and rule

changes with the SEC, and the SEC must approve such rules prior to their implementation. *See* 15 U.S.C. § 78s.

In addition, FINRA, like other SROs, must comply with the provisions of the Exchange Act and enforce compliance with these provisions by its members. *See* 15 U.S.C. §§ 78s(g)(1) and 78s(h). Thus, Congress has vested in the SEC the obligation of ensuring that FINRA performs its statutory responsibilities. In so doing, Congress not only declined to create an express private cause of action against SROs, but also created an alternative method of enforcement, relying primarily on the SEC.

In 1975, Congress acted to amend the Exchange Act in order to increase the SEC's oversight of SROs and to strengthen the SEC's enforcement powers. These amendments made explicit a SRO's responsibility to comply with the Exchange Act and its own rules. 15 U.S.C. §§ 78s(g)(1) and 78s(h). In the exercise of its oversight responsibilities, the SEC may suspend or revoke the registration of FINRA, or censure or impose limitations on its activities, if it finds that FINRA has failed to comply with, or failed to enforce compliance with, the applicable statutory or regulatory provisions. *See* 15 U.S.C. § 78s(h)(1). In addition, the SEC may censure or remove from office any officer or director of FINRA if it finds that the individual willfully failed to enforce compliance with Exchange Act, or the rules thereunder, or abused his or her position. 15 § U.S.C. 78s(g)(2). Finally, the SEC may also bring an action to enjoin any activity by an SRO that violates the Exchange Act or any rule promulgated thereunder. 15 U.S.C. § 78u(d); *Austin Mun. Sec., Inc. v. National Ass'n of Secs. Dealers, Inc.*, 757 F. 2d 676, 680 (5th Cir. 1985).

In the absence of an express private right of action, courts have consistently refused to find an implied private right of action against SROs for actions or omissions under the Exchange Act. Rather, courts have universally held that the Exchange Act bars private rights of action against SROs, be they asserted under the Exchange Act, or be they state law claims when those claims relate to defendants' SRO activities. *Sparta*, 159 F. 3d at 1212 ("it is undisputed, even by [the plaintiff], that a party has no private right of action against an exchange for violating its own rules or for actions taken to perform its self-regulatory duties under the Act."); *MM&S Financial, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 364 F. 3d 908, 910-11 (8th Cir. 2004) (holding that

Exchange Act does not create private right of action against SRO for violations of the Exchange Act, or for breach of contract); *D'Alessio*, 258 F. 3d at 100-02.[6]

Because Plaintiffs have no private express or implied right of action against FINRA, the complaint must be dismissed.

### C. Statute Of Limitations Argument.

Plaintiffs allege that, on August 11, 2005, the "DTCC" imposed a "global lock" on BCIT shares by suspending clearing services. Comp. ¶ 23. Plaintiffs go on to allege that on January 6, 2006, an Oklahoma court entered an order permitting BCIT to issue new shares to be exchanged for all the allegedly "unauthorized shares" then trading in the marketplace. Comp. ¶ 27. According to the complaint, the new shares were issued on that same day. *Id.* Plaintiffs then allege that a few days later (January 9, 2006), Standard & Poor's issued a new CUSIP number (05968X205) to the newly issued shares, rendering the old CUSIP number (05968X106) inactive. Comp. ¶¶ 28 and 29. Plaintiffs then allege that, on February 22, 2006, one of the eleven existing outstanding certificates bearing the old CUSIP numbers was exchanged for shares bearing the new CUSIP number. Comp. ¶ 32. In mid-2006, BCIT alleges that it submitted a form 15c2-11 with the new CUSIP number to FINRA and that FINRA approved the form, thus allowing BCIT to issue a press release stating that trading of BCIT shares with the new CUSIP number was now permitted. Comp. ¶ 39(g) and (i).

Plaintiffs allege that, on November 6, 2006, a second certificate bearing the old CUSIP number was exchanged for new shares bearing the new CUSIP number and that, on November 7, 2006, trading in shares bearing the new CUSIP numbers was finally permitted. After about a one half hour period, according to plaintiffs, "trading was suddenly and explicably halted due to alleged 'clerical errors' regarding the Company's CUSIP Numbers." Comp. ¶¶ 33, 39(j).

---

[6] *See also, Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.*, 191 F. 3d 198, 208 (2d Cir. 1999); *Feins v. American Stock Exchange, Inc.*, 81 F. 2d 1215, 1216 (2d Cir. 1996); *Jablon v. Dean Witter*, 614 F. 2d 677, 681 (9th Cir. 1980) ("we believe the entire statutory scheme makes it highly improbable that Congress absentmindedly forgot to mention an intended private action" in 15 U.S.C. § 78f(b) or § 78o-3(b)(6)); *FDIC v. Nat'l Ass'n of Secs Dealers, Inc.*, 582 F. Supp. 72, 74-75 (S.D. Iowa 1984); aff'd, 747 F. 2d 498 (8th Cir.1984); *Gustafson v. Strangis*, 572 F. Supp. 1154 (D. Minn. 1983) (dismissing a complaint against NASD and noting that "implied causes of action undermine the concept of self-regulation, a central component of the [Exchange] Act").

Because the shares went unquoted/untraded for 4 consecutive days, the shares were deemed "in violation of SEC Rule 15c-2-11 and, therefore, got delisted from the OTCBB market." Comp. ¶ 39(j). Plaintiffs allege that no trading of the Company's shares took place after this time because FINRA refused to permit "DTCC" to change, or fully activate the new CUSIP number. Comp. ¶ 39(e).

Plaintiffs allege FINRA refused to acknowledge that the CUSIP numbers for BCIT shares had been changed, and that as a result, the "global lock" has continued, effectively terminating and preventing all trading in the company's securities. This "global lock" is alleged to have resulted in the delisting of BCIT shares on the OTCBB. Comp. ¶ 39(j). Plaintiffs claim that such actions and conduct by the defendants constitute the torts of fraud, statutory fraud, negligence, breach of fiduciary duty, common law misrepresentation, breach of the duty of good faith and fair dealing, conversion, deceptive trade practice, interference with contract, and interference with prospective economic advantage, all arising under state law. Comp. ¶ 39(t).

The actions and conduct complained of all occurred on or before November 7, 2006, and the damages allegedly incurred commenced on that same day. The statute of limitations has run on each and every of the claims advanced in the complaint. Plaintiffs allege that BCIT is a Nevada Corporation, (Comp. ¶ 1), that defendants were conducting business in Nevada (Comp. ¶ 1), that the actions and conduct complained of were directed at and intended to cause damage to BCIT and its shareholders in Nevada (Comp. ¶ 1), that the damages occurred in Nevada (Comp. ¶ 1) and that defendants violated both specified and unspecified sections or statutes in the Nevada Revised Statutes. (Comp. ¶¶ 53, 54, 55, 84, 89, and 106.)

Federal courts exercising diversity jurisdiction are to use state statute of limitations. *West v. Conrail*, 481 U.S. 64, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987); *Nevada Power Co. v. Monsanto*, 955 F.2d 1304 (9th Cir. 1992). A complaint may be dismissed for failure to state a claim upon which relief can be granted if the action is barred by the statute of limitations. *Bemis v. Estate of Bemis*, 114 Nev. 1021, 1024, 967 P.2d 437, 439 (1998). A statute of limitations defense is appropriately raised by motion to dismiss if the running of the statute of limitations is apparent on the face of the complaint. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see*

also *London v. Coopers & Lybrand*, 644 F.2d 811, 816 (9th Cir. 1981). This is true even though expiration of the statute of limitations is an affirmative defense, because FRCP 9(f) makes averments as to time and place material for purposes of testing the sufficiency of a complaint sounding in fraud and deceit, and Rule 9(f) applies to claims based on fraud, deceit and breach of fiduciary duty, which is a species of fraud. *Suckow Borax Mines Consol., Inc. v. Borax Consol.*, 185 F.2d 196, 204 (9th Cir. 1950); *In re Maxim Integrated Prods., Inc. Sec. Litig.*, 639 F. Supp.2d 1038, 1051 (N.D. Cal 2009).

The statute of limitations on a claim for relief sounding in fraud, mistake and misrepresentation in Nevada is three years from the discovery by the aggrieved party of the facts constituting the fraud, mistake, deceit, or misrepresentation. NRS 11.190(3)(d). *Nevada Power Co. v. Monsanto*, 955 F.2d 1304 (9th Cir. 1992). A claim based on breach of fiduciary duty is also a species of fraud and is also governed by the same three year statute of limitations. *Nevada State Bank v. Jamison Family Partnership*, 106 Nev. 792, 801 P.2d 1377 (1990).

The complaint alleges that the global lock, refusing to recognize the new CUSIP number, failure and refusal to announce a new CUSIP number, and delisting of the stock all occurred in January and November 2006, and that follow on inquiries were made to discover why this happened. The statute of limitations commences to run from date of discovery of facts which, in the exercise of due diligence would have enabled plaintiffs to learn of the fraud, and not from the date the fraud is actually discovered. *Howard v. Howard*, 69 Nev. 102, 239 P.2d 584 (1952); *Nevada Power Co v. Monsanto, supra*. The facts alleged by plaintiffs plainly show that they were aware of all the "facts" on which its fraud, deceit and misrepresentation claims are based in November 2006. Plaintiffs' claims based on fraud, misrepresentation and breach of fiduciary duty ran, at the latest, in November 2009.

The statute of limitations in Nevada for the torts of "interference with contract" and "intentional interference with prospective economic advantage" is also three years. NRS 11.190(3); *Stalk, LLC v. Mushkin*, 125 Nev. 21, 22 (1993); *Desert Salon Services, Inc. v. KPSS, Inc.*, 2013 WL 497599 (D. Nev. February 2013). The "actions and conduct" complained of all occurred in January and November 2006, and the statute of limitation on these claims ran three

years later. A claim for relief based on conversion is likewise three years. NRS 11.190(3)(c); *Hartford Accident and Indem. Co. v. Rogers*, 96 Nev. 576, 613 P.2d 1025 (1980).

A claim for relief based on civil conspiracy is four years from the time of discovery of facts, or, in the exercise of reasonable diligence would lead to the discovery of facts or elements constituting a conspiracy, and commences to run at the moment of injury. NRS 11.215; *Aldabe v. Adams*, 81 Nev. 280, 402 P.2d 34 (1965). The statute of limitations based on Nevada's Deceptive Trade Practices Act, is likewise four years. *Aristocrat Technologies, Inc. v. High Impact Design & Entertainment*, 2009 WL 1811404 (D. Nev. 2009).

Finally, because Plaintiffs have not (and cannot) allege the existence of any contract, or breach of any contract, there cannot be any claim for breach of any "duty of good faith and fair dealing." There is no general duty of good faith and fair dealing, but there is an implied covenant of good faith and fair dealing in every contract. Absent a contract, however, there is no "covenant of good faith and fair dealing" that can be breached. *United Fire Insurance Co. v. McClelland*, 105 Nev. 504, 780 P.2d 193 (1989). Even if such a contract and breach of the covenant were alleged, however, the statute of limitations would be four years from the breach if such contract were not in writing (NRS 11.190(2)(a)), or six years from the breach if it were in writing. NRS 11.190(1)(b). The statute would have run on both claims long ago but no contract is alleged in any event.

### D. Plaintiffs' Failure to Exhaust Their Administrative Remedies Requires Dismissal Of The Complaint.

The failure of BCIT to exhaust its administrative remedies constitutes a fourth ground for dismissal of the complaint. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 616 F. 2d 1363, 1370-71 (5th Cir. 1980). Under the law, BCIT's challenge to the manner in which FINRA rules and/or the Exchange Act are interpreted and applied by FINRA must be determined by the SEC in the first instance.

The complaint alleges that FINRA should have "announced to all its members and to DTCC that the CUSIP Number for BCIT shares had changed, rendering all other share certificates with other CUSIP Numbers, null and void for all purposes." Comp. ¶39(d). Further

1   Plaintiffs complain that FINRA suddenly and inexplicably halted trading in BCIT shares after
2   four consecutive days of not being quoted or traded. Comp. ¶ 39(j). The gravamen of Plaintiffs'
3   claims is FINRA's alleged failure to discharge its duties and responsibilities in compliance with
4   federal rules, regulations and federal law. These matters are squarely within the SEC's oversight,
5   and Congress foreclosed judicial review of issues related to the application of FINRA rules and
6   the Exchange Act until the SEC has had an opportunity to analyze Plaintiffs' claims. 15 U.S.C. §
7   78y(c)(1)("No objection to an order or rule of the Commission, for which review is sought under
8   this section, may be considered by the court unless it was urged before the Commission or there
9   was reasonable ground for failure to do so."); see *Weinberger v. Bentex Pharm, Inc.*, 412 U.S.
10  645, 654 (1973) ("Threshold questions within the particular expertise of an administrative agency
11  are appropriately routed to that agency, while the court stays its hand."). In *Alton v. NASD, Inc.*,
12  1994 WL 443460 at *3 (N.D. Cal. July 26, 1994), *appeal dismissed as moot*, No. 94-16589, 1996
13  WL 742344 (9th Cir. Dec. 16, 1996), the Court noted that the exhaustion doctrine allows the SEC
14  "to gather evidence, exercise its discretion, and apply its expertise at more than one level. It also
15  gives the agency the opportunity to correct its own errors without resort to the courts. . . ." See
16  also *J.W. Gant & Assocs., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 791 F. Supp. 1022, 1024-25,
17  1028 (D. Del. 1992) (dismissing claims pursuant to Rule 12(h) for failure to exhaust
18  administrative remedies).
19        Because this lawsuit challenges FINRA's application and interpretation of a FINRA Rule
20  and the Exchange Act, BCIT must seek relief through the administrative channels afforded by the
21  SEC, 15 U.S.C. § 78s(h), and only after those channels have been exhausted may it seek judicial
22  review from a federal court of appeals —not the district court or the state courts. 15 U.S.C. §
23  78y; *Pennmont Sec. v. Frucher*, 586 F. 3d 242, 245-46 (3d Cir. 2009); *Datek Sec. Corp. v. Nat'l
24  Ass'n of Sec. Dealers, Inc.*, 875 F. Supp. 230, 234 (S.D.N.Y. 1995). This court lacks subject
25  matter jurisdiction to hear the complaint, as "[i]t is the SEC that is required, in the first instance,
26  to determine whether self-regulatory organizations such as [FINRA] are discharging properly
27  their duties and responsibilities in compliance with all applicable federal rules, regulations and
28  federal law." *First Jersey Sec., Inc. v. Bergen*, 605 F. 2d 690, 692 (3rd Cir. 1979) (finding lack of

jurisdiction over complaint seeking monetary relief and injunction against NASD); *see also Charles Schwab & Co. v. FINRA*, 861 F. Supp. 2d 1063, 1069 (N.D. Cal. 2012)(holding that "the failure to exhaust administrative remedies is jurisdictional"); *Rudolph v. Fulton*, 178 Cal. App. 2d 339, 342-43 (Cal. Ct. App. 1960)(exhaustion of administrative remedies is a jurisdictional prerequisite to judicial review even where plaintiff's suit asserts it has nothing to do with NASD's federal duties).

BCIT has not alleged that it attempted to pursue its grievances concerning FINRA's supposed violations of FINRA Rules and the Exchange Act with the SEC as is required by the Exchange Act. 15 U.S.C. § 78s(h). Even if BCIT had, the Court of Appeals — not this court — would be the proper forum for judicial review, and thus its complaint must be dismissed. 15 U.S.C. § 78y(b)(3); *Swirsky v. Nat'l Ass'n of Sec. Dealers, Inc.*, 124 F. 3d 59, 63-64 (1st Cir. 1997).

## IV.   CONCLUSION

FINRA respectfully submits that, for all the foregoing reasons, Plaintiffs' complaint must be dismissed as a matter of law.

Dated: April 29, 2013

                SNELL & WILMER L.L.P.

By: _/s/ William E. Peterson_
William E. Peterson, No. 1528
Suellen Fulstone, No. 1615
50 W. Liberty Street, Suite 510
Reno, Nevada 89501

Betty G. Brooks (pro hac vice admission pending)
Office of General Counsel
FINRA, Inc.
1735 K Street, N.W.
Washington, D.C. 20006
Attorneys for defendant
Financial Industry Regulatory Authority, Inc.

## **CERTIFICATE OF SERVICE**

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, nor interested in, this action. On this date, I caused to be served a true and correct copy of the foregoing **MOTION TO DISMISS** by the method indicated:

| | |
|---|---|
| XXXXXXX | by Court's CM/ECF Program |
| _____ | by U. S. Mail |
| _____ | by Facsimile Transmission |
| _____ | by Overnight Mail |
| _____ | by Federal Express |
| _____ | by Electronic Service |
| _____ | by Hand Delivery |

and addressed to the following:

Michael J. Morrison
1495 Ridgeview Drive, Suite 220
Reno, Nevada 89519

Dated this 29th day of April, 2013.

By _____
An employee of Snell & Wilmer L.L.P.

- 19 -