Michael J. Morrison, Esq.
Nevada State Bar No. 1665
1495 Ridgeview Drive, Suite 220
Reno, Nevada 89519
Tel:   (775) 827-6300
Fax:   (775) 827-6311
Email: venturelawusa@gmail.com

*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BANCORP INTERNATIONAL GROUP, a Nevada corporation; DOUGLAS R. CARON, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., a Nevada corporation; DEPOSITORY TRUST COMPANY, a New York Limited Purpose Trust Company; DEPOSITORY TRUST AND CLEARING CORPORATION, a New York corporation; NATIONAL SECURITIES CLEARING CORPORATION, a foreign corporation; FIXED INCOME CLEARING CORPORATION, a foreign corporation; DOES 1 through 100, inclusive; ROE CORPORATIONS 1 through 80, inclusive; BLACK CORPORATIONS 1 through 80, inclusive,<br><br>Defendants. | Case No.: 3:13-cv-00170-RCJ-WGC<br><br>**PLAINTIFFS' BANCORP INTERNATIONAL GROUP AND DOUGLAS R. CARON'S OPPOSITION TO MOTION TO DISMISS** |

Plaintiffs Bancorp International Group ("BCIT") and Douglas R. Caron ("Caron") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby oppose Defendant Financial Industry Regulatory Authority, Inc.'s ("FINRA") Motion to Dismiss filed with the Court on April 29, 2013, Doc. 8 ("Motion"). This opposition is based on the attached

- 1 -

memorandum of points and authorities and the pleadings and papers on file herein.

DATED this 12th day of June, 2013.

By: _____/s/ Michael J. Morrison_____
MICHAEL J. MORRISON, ESQ.
*Attorney for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   BACKGROUND.**

This is a lawsuit involving claims for fraud, misrepresentation, negligence, breach of good faith and fair dealing, conversion, deceptive trade practices, racketeering, interference with contracts, interference with economic advantages, and seeking injunctive and declaratory relief against Defendants. A summary of the facts alleged in Plaintiffs' Complaint is as follows.

BCIT is a publicly traded company registered with the Securities and Exchange Commission ("SEC") and incorporated in the State of Nevada. Its shares of common stock are listed for trading on the Over-The-Counter Bulletin Board ("OTCBB") under the symbol "BCIT." Caron is a shareholder of BCIT who purchases and sells BCIT securities in the OTCBB market. Compl. ¶6.

In early 2005, BCIT, prompted by a huge unexplained increase in BCIT's trading volume, notified the SEC, FINRA (then the National Association of Securities Dealers, Inc. ["NASD"]) and Defendant Depository Trust and Clearing Corporation ("DTCC") of potential unauthorized trading of BCIT shares in the marketplace. Compl. ¶22.

The SEC would later confirm its belief that BCIT was the victim of identity theft at that time in Litigation Release No. 20466, when 41 unauthorized stock certificates representing approximately 245,000,000 BCIT shares illegally entered the marketplace on or about May through August 2005. Compl. ¶21.

As a result of the suspected unauthorized trading, DTCC suspended clearing services, also known as placing a "global lock," on BCIT shares, then bearing the CUSIP No. 05968X106

- 2 -

("CUSIP No. 106"), although many brokers continued trading in contravention of the suspended clearing status. This suspension of clearing services implicated only approximately eight certificates representing 795,581 BCIT shares bearing CUSIP No. 106 (those shares issued prior to the unauthorized activity taking place). Compl. ¶23.

Thereafter, the SEC announced a temporary suspension of trading in BCIT's shares commencing on August 31, 2005 and terminating on September 14, 2005 in order to facilitate the location and surrender of unauthorized BCIT shares in the marketplace. Reporting institutions were given one working day to locate and submit fake/fraudulent BCIT shares. Compl. ¶26.

On January 6, 2006, the U.S. District Court of Oklahoma, as part of a settlement between the parties in Case No. CJ-2005-7459 (the "Oklahoma Case"), issued a court order authorizing BCIT to issue new (authorized) shares pursuant to Section 3(a)(10) of the 34 Act to be exchanged for the approximately 245,000,000 (the amount estimated to be present in the marketplace by BCIT and the SEC) unauthorized BCIT shares (the "Oklahoma Court Order"). Compl. ¶27.

On January 6, 2006 and in compliance with the Oklahoma Court Order, BCIT filed with the Secretary of State of Nevada an Amendment to BCIT's Articles of Incorporation altering the capital structure of BCIT. Compl. ¶28.

On January 9, 2006, due to BCIT's amended capital structure, Standard and Poor's CUSIP Global Services ("S&P CUSIP Global Services") issued a new CUSIP Number 05968X205 ("CUSIP No. 205") and rendered the former CUSIP No. 106 inactive. Compl. ¶29. S&P CUSIP Global Services has sole authority to issue or discontinue CUSIP Numbers and has unconditionally confirmed CUSIP No. 205 is the sole and exclusive active CUSIP Number for BCIT shares and CUSIP No. 106 is null and void. Compl. ¶30.

Subsequent to the above events and prior to obtaining the time to redesign its share certificates, BCIT, on the advice of counsel and in accordance with the settlement in the Oklahoma Court Case, issued two pre-printed certificates originally bearing the name of "March Indy" (BCIT's previous corporate name), with the words "March Indy" crossed out

1  and "Bancorp International Group" and the newly issued CUSIP No. 205 printed thereon to
2  deter any confusion by the issuance of an altered version of the existing BCIT certificates
3  presently in the marketplace with their then-invalid CUSIP Numbers.  Compl. ¶31.  Together,
4  these two certificates bearing the new CUSIP No. 205 were cleared and exchanged for BCIT
5  Certificate Nos. 2093 and 2110, respectively.  Compl. ¶¶32-33.  BCIT Certificate Nos. 2093 and
6  2110 were not then, nor have they ever been, subject to a DTCC global lock.  Compl. ¶35.

7  Although (1) FINRA, DTCC and S&P CUSIP Global Services work very closely
8  together and FINRA and DTCC thus should have been informed of the authorized change in
9  CUSIP Numbers and (2) the 245,000,000 shares had been newly printed on BCIT Certificates
10 bearing BCIT's unique new CUSIP No. 205 pursuant to the court's order in the Oklahoma Case,
11 BCIT learned brokers transacting trades of BCIT would not change the CUSIP Number on their
12 clients' accounts from No. 106 to No. 205, indicating  DTCC would not change or activate
13 CUSIP No. 205 because FINRA would not allow DTCC to do so.  Compl. ¶39(c)-(e).

14 In mid-2006, Legacy became the Market Maker for BCIT and submitted a required
15 Form 15c2-11 to FINRA.  The Form 15c2-11 used the CUSIP No. 205 and CUSIP No. 205 was
16 accepted by, and eventually processed by, FINRA as the new and unique CUSIP Number for
17 BCIT shares.  Compl. ¶39(g).

18 In mid-2006, other brokerage firms, such as E-Trade, started using and quoting CUSIP
19 No. 205 on clients' accounts.  Compl. ¶39(h).

20 On October 26, 2006, BCIT issued a press release announcing that FINRA had approved
21 the new 15c2-11 form recognizing the new CUSIP No. 205 and BCIT would commence trading
22 shares in the public markets.  Compl. ¶39(i).

23 On November 7, 2006, BCIT shares commenced trading in the public markets for
24 approximately 30 minutes before trading was abruptly and inexplicably halted due to alleged
25 "clerical errors" regarding the BCIT's CUSIP Numbers.  Thereafter, BCIT's stock went
26 unquoted/untraded for four consecutive days.  As a result, BCIT was deemed to be in violation
27 of SEC Rule 15c-2-11 and BCIT's stock was delisted from the OTCBB market.  Compl. ¶39(j).
28 / / /

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, Nevada 89509
(775) 827-6300 ∗ Fax (775) 827-6311

1  FINRA has refused or failed to respond to BCIT's inquiries regarding: (1) the nature of
2  the "clerical errors" that caused the cessation of trading on November 7, 2006; (2) whether
3  FINRA represents that it never received the 15c-2-11 form; (3) why FINRA failed in 2006 to
4  make a public announcement, and has not since made a public announcement, as to the CUSIP
5  Number change for BCIT shares; and (3) why a global lock remains on public trading of BCIT
6  shares up to and including the time of filing of this Motion.  Compl. ¶39(s).

7  BCIT has made continuing good-faith efforts to resolve any lingering confusion FINRA
8  may have stemming from the corporate identity theft of BCIT shares and the court's resolution
9  of the parties' damages in the Oklahoma Case in the form of reissued authorized shares pursuant
10 to Section 3(a)(10) of the 34 Act, including, but not limited to, issuing a press release in
11 December of 2012 indicating that December 31, 2012 would be the final deadline to exchange
12 any invalid BCIT securities, after which they would be cancelled and deemed worthless.
13 Compl. 39¶(l)-(n).

14 Plaintiffs filed their Complaint in the Second Judicial District Court of Nevada, Case No.
15 CV13-00506, on March 7, 2013.  Defendant FINRA removed the case to this Court on April 5,
16 2013 based on diversity and federal question jurisdiction pursuant to 28 U.S.C. §§1441, 1331,
17 and 1332.

18 **II.     ARGUMENT.**

19 **A.     Standard of Review for Dismissal Under FRCP 12(b)(6).**

20 In evaluating a motion to dismiss, "all allegations of material fact are taken as true and
21 construed in the light most favorable to the nonmoving party." *Bugert v. Lokelani Bernice*
22 *Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000), citing *Enesco Corp. v. Price/Costco,*
23 *Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998).  Dismissal pursuant to Rule 12(b)(6) is "proper only
24 where there is no cognizable legal theory or there is an absence of sufficient facts alleged to
25 support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001), citing
26 *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  A complaint should not be
27 dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support
28 of its claim for relief." *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998).  The issue is not

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, Nevada 89509
(775) 827-6300 ∗ Fax (775) 827-6311

whether a plaintiff is likely to succeed on the merits but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his or her claims." *De La Cruz v. Tormey*, 582 F. 2d 45, 48 (9th Cir. 1978).

### B. FINRA's Motion to Dismiss Should Be Denied Because FINRA Was Not Acting Within Its Regulatory Authority When Committing Its Unlawful Acts Against Plaintiffs.

The grant of absolute immunity is limited to those functions performed in the exercise of an SRO's quasi-governmental authority. *See Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1999) ("Extending immunity *when a self-regulatory organization is exercising quasi-governmental powers* is consistent with the structure of the securities market as constructed by Congress.") (emphasis added); *see also Partnership Exch. Sec. Co. v. NASD*, 169 F.3d 606, 608 (9th Cir. 1999) (explaining the Ninth Circuit applies "absolute immunity to a self-regulatory organization that exercises quasi-governmental powers within its regulatory capacity" only).

It is clear that the courts have not created absolute immunity for SROs, but rather an absolute immunity strictly and narrowly limited to only those functions falling within the quasi-governmental powers of an SRO. *See, e.g., Standard Inv. Chartered, Inc. v. National Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011), citing *Forrester v. White,* 484 U.S. 219, 229 (1988) ("We apply a functional test to determine whether an SRO is entitled to immunity based upon the facts before us [citation omitted], which requires us to look at the nature of the function performed, not the identity of the actor who performed it.").

In determining whether an SRO is entitled to regulatory immunity, the courts should remain mindful that the doctrine of absolute immunity is "of a rare and exceptional character." *Id.* at 115, citing *Barrett v. United States*, 798 F.2d 565, 571 (2d Cir. 1986). The courts have uniformly acted on a "case by case basis" to decide what conduct falls within the quasi-judicial powers of an SRO based on a grant of authority by Congress to regulate the securities markets. *Id.* at 116, citing *DL Capital Grp., LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 97 (2d Cir. 2005). In each case, "[t]he party asserting immunity bears the burden of demonstrating its entitlement." *Id.*, citing *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 105 (2d

MICHAEL J. MORRISON
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, Nevada 89509
(775) 827-6300 ∗ Fax (775) 827-6311

Cir. 2001). Manifestly, this process and ultimate determination involves an in-depth analysis of the facts and circumstances in each individual case. And the present case involves a complex and convoluted set of facts which cannot be fully presented to this Court for analysis without extensive discovery.

Defendant FINRA relies on two Ninth Circuit cases as ruling authority in this matter. In *Partnership Exchange Securities Company*, the court found that the National Association of Securities Dealers, Inc. ("NASD")[1] was subject to regulatory immunity while acting in its prosecutorial capacity in a disciplinary action. 169 F.3d at 607-8. The ruling in this case clearly applies to a set of facts not implicated in the instant action and relies on a definition of quasi-governmental powers that is synonymous with quasi-*judicial* powers specifically.

In *Sparta*, the Ninth Circuit court found that the NASD was acting within its regulatory authority and subject to absolute immunity where Sparta's stock was delisted and trading suspended without explanation for one day, after which trading on the offering resumed. 159 F.3d at 1210. Any intimation that the facts establishing absolute immunity for the NASD in *Sparta* are remotely analogous to the facts in the case at hand is well beyond the pale of any case authority and, very significantly, grossly diminishes the conduct and resulting harms perpetrated by FINRA herein.

Indeed, in this unique case, BCIT was the victim of corporate identity theft. BCIT brought a suit in good faith in compliance with, and acting under the authority of, the Securities Exchange Act of 1933 ("Section 3(a)(10)"). The court in the Oklahoma Case unconditionally agreed with the assertions of corporate identity theft set forth by BCIT and authorized BCIT to reissue 245,000,000 unauthorized shares under a new CUSIP Number under the authority of Section 3(a)(10). Section 3(a)(10) is an exemption from SEC registration for specified transactions oftentimes used by state courts in settling class actions involving shareholders and provides:

> [A]ny security which is issued in exchange for one or more *bona fide* outstanding securities, claims or property interests, or partly in such exchange and partly for cash, where the terms and conditions

---

[1] The Financial Industry Regulatory Authority, Inc. ("FINRA") became the successor to the NASD in July of 2007.

>of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court, or by any official or agency of the United States, or by any State or Territorial banking or insurance commission or other governmental authority expressly authorized by law to grant such approval….

15 U.S.C. § 77c(a)(10), Section 3(a)(1).

Before an issuer can rely on the exemption:

- The securities must be issued in exchange for securities, claims, or property interests; they cannot be offered for cash.
- A court or authorized governmental entity must approve the fairness of the terms and conditions of the exchange.
- The reviewing court…must:
  - find, before approving the transaction, that the terms and conditions of the exchange are fair to those to whom securities will be issued; and
  - be advised before the hearing that the issuer will rely on the Section 3(a)(10) exemption based on the court's…approval of the transaction.
- The court…must hold a hearing before approving the fairness of the terms and conditions of the transaction.
- A governmental entity must be expressly authorized by law to hold the hearing, although it is not necessary that the law require the hearing.
- The fairness hearing must be open to everyone to whom securities would be issued in the proposed exchange.
- Adequate notice must be given to all those persons.
- There cannot be any improper impediments to the appearance by those persons at hearing.

U.S. Securities and Exchange Commission, Division of Corporate Finance; Revised Staff Legal Bulletin No. 3 (CF).

The court in the Oklahoma Case, when acting under authority of Section 3(a)(10), was required to adhere to stringent guidelines promulgated by the SEC, whereby a court is obligated "to find both the terms of and procedures for the exchange to be fair." *Id.* at fn. 28.  BCIT complied with the Oklahoma Court Order when filing amended Articles of Incorporation to alter BCIT's capital structure.  As a result of the Oklahoma Court Order and BCIT's capital

- 8 -

restructure, Standard & Poor's acted within its exclusive authority[2] by issuing a new CUSIP No. 205 to BCIT and rendering the existing CUSIP No. 106 null and void. In 2008, the SEC separately sought remedy for its damages by bringing a private action against the alleged perpetrator of the corporate identity theft against BCIT. All of these players acted within the articulated or intended authority of a state court order issued in accordance with Section 3(a)(10). Thereafter, FINRA refused to authenticate the CUSIP No. 205 and forced BCIT shares into a position whereby trading would cease and a global lock could occur. FINRA's acts were, and remain, in direct contravention *not* of the Exchange Act rules, but of the Oklahoma Court Order and of the intent of Section 3(a)(10), in circumstances such as those involved in the present case, to allow redress and remuneration through private action *vis-à-vis* an exemption to the rules.

Although Defendant FINRA boldly informs the Court that FINRA has absolute immunity, even from illegal actions (Mot. 10:17), Plaintiffs have alleged sufficient facts in their Complaint to create a legally cognizable theory of liability whereby FINRA was not acting within its regulatory immunity when clearly and blatantly violating the unequivocal terms of a state court order obtained by BCIT in good faith through considerable time and expense, which order provided for a remedy authorized by Section 3(a)(10)'s exemption to the Exchange Act rules.

Also, although FINRA takes great care to characterize Plaintiffs' harms as arising from FINRA's single isolated act of placing a global lock on BCIT shares on November 7, 2006 (*see* Mot. 14:8:13), Plaintiffs have alleged sufficient facts to establish that the harm done by Defendants is ongoing and that Plaintiffs' considerable and continuous efforts, even as recently as December 2012, to discover the reasons behind FINRA's continuing global lock on trading of BCIT shares have been met, to date, with a virtual wall of silence. Plaintiffs' Complaint includes claims for declaratory and injunctive relief so that the Court might otherwise accomplish what Plaintiffs have been unable to do through exhaustive good-faith efforts, i.e., to establish under what set of facts or circumstances FINRA continues to stand in the way of

---

[2] The American Banker's Association is the exclusive distributor of CUSIP Numbers and is operated by

- 9 -

1 BCIT's stock trading, and to establish under what set of facts or circumstances BCIT might be
2 allowed to cure any perceived problems, if any, and thereby bring an end to FINRA's global
3 lock on trading of BCIT shares. Certainly, FINRA's singular defense of absolute immunity
4 against Plaintiffs' claims is wholly inappropriate, where, as here, Plaintiff has alleged that
5 FINRA has never revealed the facts by which it continues to block trading of BCIT shares
6 to Plaintiffs, nor has it provided these facts to this Court in its Motion.  A dismissal under
7 such circumstances would disregard a body of law regarding private versus governmental
8 function and must presume that all activities under any set of facts and circumstances of an
9 SRO are subject to absolute immunity, where, in reality, there are activities of SROs which fall
10 outside of an SRO's regulatory authority and within their private function. *See, e.g., Weissman*
11 *v. National Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1298 (11th Cir. 2007) ("Because we
12 conclude that Nasdaq's advertising activity alleged in this case does not serve an adjudicatory,
13 regulatory or prosecutorial function, the district court's denial of absolute immunity to
14 Nasdaq for the advertisements described in this case is affirmed."); *see also Opulent Fund v.*
15 *Nasdaq Stock Mkt., Inc.,* 2007 WL 3010573, at *5 (N.D. Cal. Oct. 12, 2007) (finding Nasdaq's
16 calculation and dissemination of an index price served to "facilitate derivative trading" rather
17 than protect the public and, as such, was non-regulatory conduct.)  And very significantly to
18 the instant Motion, this Court needs to review all of the facts and circumstances surrounding
19 the instant case and FINRA's conduct herein before the issue of immunity can be decided. *See, e.g.,*
20 *Standard Inv. Chartered, Inc. v. National Ass'n of Sec. Dealers, Inc.*, *supra*.  And FINRA has
21 the burden of presenting the facts and circumstances supporting its bald claim of immunity,
22 which it has not done herein. *Id.*

23     **C.**     **FINRA's Motion to Dismiss Should Be Denied Because Defenses of Private Right of Action and Exhaustion of Administrative Remedies Are Applicable Only to Claims Brought Against SROs Acting Within Their Regulatory Authority, Which is Not the Case Here.**

26 In arguing Plaintiffs have no private right of action against SROs, FINRA once again
27 mischaracterizes conditional immunity, dependent on a fact-intensive regulatory versus non-
28

Standard & Poor's.

regulatory analysis, as unconditional immunity. The courts have not created unconditional "absolute" immunity for SROs. FINRA's exhaustive citations to the Exchange Act rules to establish that Plaintiffs have no private right of action under the rules becomes nothing more than a tautological exercise, when, in this case, Plaintiffs have alleged claims for relief for damages arising out of FINRA's non-regulatory conduct. *See, e.g.*, Mot. 11:22-24 ("Neither Section 19(g) nor Section 15A of the Exchange Act, nor any other provision of the federal securities laws expressly provides for a cause of action against a[n] SRO *for misconduct in connection with the regulation of its members firms*.") (emphasis added); Mot. 16:23-25; *see also Sparta*, 159 F.3d at 1212 ("it is undisputed , even by [the plaintiff], that a party has no private right against an exchange for violating its own rules or *for actions taken to perform its self-regulatory duties under the Act*.") (emphasis added), relied on by FINRA in its Motion. 12:25-28.

FINRA's arguments relating to exhaustion of administrative remedies once again presupposes that Plaintiffs are bringing claims for acts arising under the agency's rules. As set forth above, Plaintiffs have alleged claims against FINRA for conduct which falls outside of the FINRA's quasi-governmental authority. FINRA has cited to no case which stands for the assumption that the SEC has exclusive jurisdiction over an SRO's conduct which falls outside of its regulatory authority. *See also Opulent Fund v. Nasdaq Stock Market, Inc.*, 2007 WL 3010573, at *6 (N.D. Cal. Oct. 12, 2007) ("[N]o case cited by Nasdaq holds that the SEC has exclusive jurisdiction over SRO conduct falling outside of the SRO's regulatory functions. [Citations omitted]. Absent authority to the contrary, the court does not believe administrative exhaustion is required in this context.").

**D. FINRA's Motion to Dismiss Should Be Denied Because Plaintiff Has Stated Cognizable Claims for Relief Within the Respective Statutes of Limitations.**

"[F]ederal courts exercising diversity jurisdiction are to use state statute of limitations. *Nevada Power Co. v. Monsanto*, 955 F.2d 1304, 1306 (9th Cir. 1992), citing *West v. Conrail*, 481 U.S. 35, 39 n. 4 (1987). "A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the

- 11 -

required liberality, would not permit the plaintiff to prove the statute was tolled.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996); *Vaughn v. Grijalva*, 927 F.2d 476, 478 (9th Cir. 1991).

Although the general rule concerning statutes of limitations is that a cause of action accrues when the wrong occurs and injury is thereby sustained, the Nevada Supreme Court recognizes an exception to the general rule in the form of the "discovery rule." *Sirgausa v. Brown*, 114 Nev. 1384, 1391, 971 P.2d 801, 806 (1998), quoting *Peterson v. Bruen*, 106 Nev. 271, 792 P.2d 18 (1990). "Under the discovery rule, the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Id.*

For purposes of a fraud claim, the Nevada Supreme Court has determined that "the statute of limitation commence[s] to run from the discovery of facts which in the exercise of proper diligence would have enabled the plaintiff to learn of the fraud." *Nevada Power*, 955 F.2d at 1306, quoting *Howard v. Howard*, 69 Nev. 12, 239 P.2d 584, 589 (1952). A cause of action for fraud requires a showing of false representation of a material fact, known to be false, with the intent to induce reliance. *Lubbe v. Barba*, 91 Nev. 596, 599, 540 P.2d 115, 117 (1975). Therefore, the statute of limitations for fraud accrues not at the time of the false representation, but when a plaintiff has through proper diligence discovered facts regarding the "knowing" and "intentional" elements of a fraud claim. Although not directly apposite, the court's reasoning in *Nevada Power Co.* for remanding plaintiff's fraud claims that had been summarily dismissed as barred by the statute of limitations is illustrative:

> It may be that in most cases where the facts of a negligence claim are known, the "proper diligence" rule would start the limitations period running. But in those cases where, even with knowledge of the facts of a negligence claim, proper diligence could not uncover the facts regarding *state of mind needed for a fraud claim*, it would be unduly harsh and inequitable to hold that the fraud action always accrues at the time of the negligence action. We are not persuaded that the Nevada Supreme Court would adopt such a rule.

955 F.2d at 1308 (emphasis added).

**MICHAEL J. MORRISON**
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, Nevada 89509
(775) 827-6300 ∗ Fax (775) 827-6311

Here, Defendant FINRA relies on a crude estimation of when the respective statutes of limitations begins to run for Plaintiffs' fraud claim, and each of Plaintiff's claims (*see* Mot. 14:15, "The actions and conduct complained of all occurred on or before November 7, 2006…."), that does not comport with the "discovery rule" adopted by Nevada courts. First, the Complaint specifically alleges that FINRA was making false representations up to and including December 23, 2012. *See* Compl. ¶27. Also, Plaintiffs have alleged facts that indicate they have made a continuing and comprehensive effort, up to and including actions taken in December 2012, in good faith, to determine FINRA's knowledge and intent in making these representations and in suspending and continuing to impose a global lock on trading of BCIT shares. Furthermore, unless and until FINRA is forthcoming with the long-demanded facts and circumstances explaining, *inter alia*, why the BCIT shares have not been trading, there is simply no way to determine whether the conduct of FINRA was a regulatory act or a non-regulatory act, all of which falls squarely within the Nevada "discovery rule." Plaintiffs respectfully submit that the statutory discovery process will resolve the issues surrounding the respective statutes of limitation.

Plaintiffs' conspiracy claim has the same element of "diligent discovery" that requires courts to look beyond a basic "date-of-the-injury" analysis to determine when the statute of limitations runs. *Siragusa v. Brown*, 114 Nev. 1384, 1392, 971 P.2d 801, 806 (1998), citing *Petersen v. Bruen,* 106 Nev. 271, 792 P.2d 18. As cogently articulated by the Court in *Siragusa*, an action for civil conspiracy accrues when the plaintiff discovers or should have discovered through proper diligence "all of the necessary facts constituting a conspiracy claim." *Id.* at 1393, 971 P.2d at 807. Again, Plaintiffs have alleged facts indicating they have made a continuing effort to discover all of the facts necessary to support a claim of conspiracy between the various Defendants in this matter, which efforts extend well beyond FINRA's yet-unexplained initial act on November 7, 2006.

Nevada's Deceptive Trade Act statutes are in line with the fraud-based authority referenced above regarding the general rule versus discovery rule, in that the statutes require a plaintiff to establish an element of knowledge. NRS 598.0932 ("Deceptive trade practice"

**MICHAEL J. MORRISON**
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, Nevada 89509
(775) 827-6300 ∗ Fax (775) 827-6311

1  defined.  A person engages in a "deceptive trade practice" when in the course of his or her
2  business or occupation he or she knowingly…."); *see also State ex rel. List v. AAA Auto*
3  *Leasing & Rental, Inc.*, 95 Nev. 483, 486 n.3, 568 P.2d 1203, 1232 n.3 (1977).
4        In determining when the statute of limitations runs on the torts of interference of
5  contracts and intentional interference with prospective economic advantage, the Nevada
6  courts look to "triggering events" and have taken a "last in time" approach to determining the
7  triggering event for the statute of limitations to begin to run.  *Stalk v. Mushkin*, 125 Nev. 21, 27,
8  199 P.3d 838, 842 (2009) ("While [plaintiffs] offer various events as triggering the beginning of
9  the limitations period on their claims for intentional interference with prospective advantage and
10 contractual relations, the letter from Bird occurred last in time among the proposed triggering
11 events."); *see also Sorenson v. Pavlikowski*, 94 Nev. 440, 444, 581 P.2d 851, 854 (1978)
12 ("Here, however, whether the precise act which triggered the statute of limitations was the
13 denial of credit or the actual judgment of arrearages is immaterial as the case was filed within
14 the limitations for both the credit problem and the judgment.").  In the instant action, Plaintiffs
15 have alleged facts that indicate they have made continuing efforts to cooperate with FINRA in
16 order to have the global lock on public trading of BCIT shares lifted, all to no avail.  Each of
17 these spurned efforts constitutes a triggering event, whereby the Court might find the statute of
18 limitations accrued, and the most recent last-in-time event was in December 2012.
19       For each of Plaintiffs' claims, Plaintiffs have alleged facts sufficient to establish they
20 have made ongoing efforts, although met by resistance from FINRA, to discover those yet-
21 unknown facts and circumstances surrounding FINRA's placement of a global lock on trading
22 of BCIT shares.
23       Plaintiffs respectfully request the Court find that they have alleged sufficient facts in
24 their Complaint, under the notice pleading standards of federal rules, to create legally cognizable
25 claims for relief and, therefore, deny Defendant FINRA's Motion to Dismiss.  In the alternative,
26 Plaintiffs respectfully request the Court grant Plaintiffs leave to amend their Complaint,
27 consistent with FRCP 15(a)(2).
28 / / /

**MICHAEL J. MORRISON**
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, Nevada 89509
(775) 827-6300 ∗ Fax (775) 827-6311

**CONCLUSION**

For the reasons set forth above, Plaintiffs Bancorp International Group and Douglas R. Caron respectfully request an Order of the Court denying Defendant Financial Industry Regulatory Authority, Inc.'s Motion to Dismiss.

DATED this 12th day of June, 2013.

By:     /s/ Michael J. Morrison
    MICHAEL J. MORRISON, ESQ.
    *Attorney for Plaintiffs*

**MICHAEL J. MORRISON**
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, Nevada 89509
(775) 827-6300 ∗ Fax (775) 827-6311

# CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of the law firm of Michael J. Morrison, Esq., and that on this date, I caused a true and correct copy of the attached **PLAINTIFFS' BANCORP INTERNATIONAL GROUP AND DOUGLAS R. CARON'S OPPOSITION TO MOTION TO DISMISS** to be served on all parties to this action by:

__X__  the Court's CM/ECF program to:

William E. Peterson, Esq.
Suellen Fulstone, Esq.
Snell & Wilmer, L.L.P.
Email: wpeterson@swlaw.com
         sfulstone@swlaw.com

__X__  U.S. Mail, postage prepaid, to:

Betty G. Brooks, Esq.
Office of General Counsel
FINRA, Inc.
1735 K Street, N.W.
Washington, DC 20006

William E. Peterson, Esq.
Suellen Fulstone, Esq.
Snell & Wilmer, L.L.P.
50 West Liberty Street, Suite 510
Reno, Nevada 89501

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

_____  personal delivery/hand delivery

_____  Federal Express/UPS or other delivery

_____  Reno Carson Messenger Service

DATED this 12th day of June, 2013.

                                           /s/ Christelle Morrison
                                    Christelle Morrison

**MICHAEL J. MORRISON**
Attorney and Counselor at Law
1495 Ridgeview Drive, Suite 220
Reno, Nevada 89509
(775) 827-6300 ∗ Fax (775) 827-6311