Daniel T. Hayward, Esq.
Nevada State Bar No. 5986
LAXALT & NOMURA, LTD.
9600 Gateway Drive
Reno, Nevada 89521
dhayward@laxalt-nomura.com
Telephone: (775) 322-1170
Facsimile: (775) 322-1865

*Attorneys for Defendants*
*The Depository Trust Company,*
*The Depository Trust & Clearing Corporation,*
*National Securities Clearing Corporation, and*
*Fixed Income Clearing Corporation*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BANCORP INTERNATIONAL GROUP, a Nevada Corporation; DOUGLAS R. CARON, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., a Nevada corporation; DEPOSITORY TRUST COMPANY, a New York Limited Purpose Trust Company; DEPOSITORY TRUST AND CLEARING CORPORATION, a New York corporation; NATIONAL SECURITIES CLEARING CORPORATION, a foreign corporation; FIXED INCOME CLEARING CORPORATION, a foreign corporation, et al., <br><br> Defendants. | Case No. 3:13-cv-00170-RCJ-WGC <br><br><br> **MOTION TO DISMISS OF DEFENDANTS THE DEPOSITORY TRUST COMPANY, THE DEPOSITORY TRUST & CLEARING CORPORATION, NATIONAL SECURITIES CLEARING CORPORATION, AND FIXED INCOME CLEARING CORPORATION** |

Defendants The Depository Trust Company,   The Depository Trust & Clearing Corporation, National Securities Clearing Corporation and Fixed Income Clearing Corporation (together the "DTCC Defendants") move the Court in accordance with Rule 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure to dismiss the complaint.

This motion is made on the grounds that:  (a) the DTCC Defendants enjoy immunity under the law from all of Plaintiffs' claims; (b) no private right of action exists under the federal securities laws that govern this action; (c) Plaintiffs have failed to exhaust their administrative remedies; (d) Plaintiffs' claims are time-barred by the applicable statutes of limitation; (e) the Court does not have personal jurisdiction over the DTCC Defendants; (f) Plaintiffs have not pleaded the essential elements of any of their causes of action against the DTCC Defendants; and (g) Plaintiff Douglas Caron does not have standing to sue the DTCC Defendants for damages allegedly suffered by Plaintiff Bancorp International Group.

This motion is based on Plaintiffs' complaint and supported by the following memorandum of points and authorities.

Dated:  August 29, 2013

LAXALT & NOMURA, LTD.

By: _____
Daniel T. Hayward, Esq.
Nevada State Bar No. 5986
9600 Gateway Drive
Reno, Nevada  89521

*Attorneys for Defendants*
*The Depository Trust Company,*
*The Depository Trust & Clearing Corporation,*
*National Securities Clearing Corporation, and*
*Fixed Income Clearing Corporation*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    SUMMARY OF ARGUMENT**[1]

Plaintiffs purport to challenge certain of FINRA's regulatory decisions - made nearly seven years ago – to remove Bancorp International Group ("BCIT") on November 7, 2006 from the Over-the-Counter Bulletin Board ("OTCBB") and not to make announcements to its membership concerning BCIT share certificates.  Though hardly a model of clarity, the suit appears to allege that, by complying with and relying on FINRA's regulatory decisions, the DTCC Defendants have caused damages to BCIT and its shareholders.  The suit, therefore, must be dismissed for at least the following seven reasons.

First, as set forth in FINRA's moving brief, because FINRA is a Self-Regulatory Organization ("SRO"), it is absolutely immune from suits related to its regulatory activities at issue in this suit.  By alleging that the DTCC Defendants comported with and relied on FINRA's regulatory decisions in taking actions with respect to BCIT's shares, the DTCC Defendants are derivatively immune by virtue of FINRA's absolute immunity.[2]  *See Dexter v. Depository Trust & Clearing Corp.*, 219 F. App'x. 91 (2d Cir. 2007), *summarily aff'g* 406 F. Supp. 2d 260 (S.D.N.Y. 2005).

---

[1] This memorandum is intended to supplement defendant The Financial Industry Regulatory, Inc.'s ("FINRA") moving and reply briefs (the "FINRA Briefs"), in which Defendants The Depository Trust Company ("DTC"), The Depository Trust & Clearing Corporation ("DTCC"), National Securities Clearing Corporation ("NSCC"), and Fixed Income Clearing Corporation ("FICC," together with DTC, DTCC and NSCC, the "DTCC Defendants") join and which they adopt and incorporate by reference.  This memorandum is also intended to highlight certain facts and law unique to the DTCC Defendants.  Accordingly, for a full statement of the underlying facts and legal analysis, the Court is respectfully referred to the FINRA Briefs.

[2] Because the DTCC Defendants are immune from suit as a result of FINRA's absolute immunity, the DTCC Defendants need not address the issue of their independent immunity, but reserve their rights with respect to that issue.

1

<u>Second</u>, the DTCC Defendants are registered clearing agencies pursuant to Section 17A of the Securities Exchange Act of 1934 (the "Exchange Act"). The Exchange Act does not provide for a private cause of action against the DTCC Defendants under the circumstances that have given rise to this suit.

<u>Third</u>, Plaintiffs have not exhausted their administrative remedies before the Securities and Exchange Commission ("SEC"). This requirement is fundamental to the comprehensive regulatory system established by the Exchange Act. Congress has intentionally and specifically designated the SEC as the entity to enforce the securities laws and rules with respect to SROs, such as FINRA and the DTCC Defendants. Courts have routinely refused to countenance suits such as Plaintiffs', which is a manifestly improper attempt to bypass a fundamental mandate of the SEC.

<u>Fourth</u>, Plaintiffs' "state law" claims are completely barred on the grounds that the statute of limitation applicable to each claim expired a long time ago.

<u>Fifth</u>, Plaintiffs have failed to allege sufficient facts to form a basis for this Court to exercise personal jurisdiction over the DTCC Defendants. Plaintiffs' solitary and conclusory assertion that "[a]t all times pertinent hereto, DTC was doing business in Nevada..." does not and cannot satisfy the most elementary jurisdictional pleading requirements under the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

<u>Sixth</u>, Plaintiffs have neither properly nor sufficiently pleaded any of their common law causes of action against the DTCC Defendants.

<u>Seventh</u>, Plaintiff Caron lacks standing and, therefore, cannot sue the DTCC Defendants for damages allegedly suffered by BCIT.

For all these reasons, the complaint should be dismissed as against the DTCC Defendants.

## II.   BACKGROUND

### A.   FINRA and the Comprehensive System Established by Congress for Regulating the Securities Markets.

As set forth in greater detail in FINRA's moving brief:

FINRA is an SRO registered with the SEC as a national securities association pursuant to the 1938 Maloney Act Amendments, 15 U.S.C. § 78o-3 *et seq.*, to the Exchange Act. As an SRO, FINRA is part of the Exchange Act's highly interrelated and fully comprehensive mechanism for regulating the securities markets.

FINRA is required to comply with the Exchange Act, SEC rules, and its own rules adopted through the SEC's comprehensive oversight process. 15 U.S.C. § 78s(g). Congress has designated the SEC as the entity that will enforce the Exchange Act, SEC rules, and FINRA rules against FINRA. The SEC may suspend or revoke FINRA's registration, may limit FINRA's activities, functions, or operations, may censure FINRA or any of its officers or directors, and may remove any FINRA officer or director from office. 15 U.S.C. §§ 78s(c), (h)(1), (h)(4). In addition, Congress has authorized the SEC to enjoin any FINRA activity that would violate the Exchange Act or FINRA's rules and to seek civil penalties against violators. *See* 15 U.S.C. §§ 78u(d)(l), (d)(3)(a).

...

FINRA acts under the close supervision of the SEC. With a few exceptions not relevant here, the SEC must approve all FINRA rules, policies, practices, and interpretations before they are implemented. *See* 15 U.S.C. § 78s(b). At any time, the Commission may "abrogate, add to, [or] delete from" the rules of FINRA. 15 U.S.C. § 78s(c).

Congress also has placed substantive limits on the rules that FINRA may adopt. For example, FINRA may not adopt a "rule or regulation which would impose a burden on competition not necessary or appropriate in furtherance of the purposes" of the Exchange Act, and the SEC must consider the effects on competition of any rules or regulations proposed by FINRA before approving those rules. 15 U.S.C. §§ 78w(a)(2), 78f(b)(8), 78o-3(b)(9).

(DKT. 8 at *4-5).

### B.   The National Clearance and Settlement System for Securities Transactions.

In asserting claims against the DTCC Defendants for complying with and relying on the regulatory decisions of FINRA, Plaintiffs' claims implicate the broad national policy, as

3

established by Congress and implemented by the SEC, governing the national clearance and settlement system for securities transactions.

In 1975, Congress added Section 17A to the Exchange Act in order to remove impediments to and perfect the mechanism of a uniform national system for the prompt and accurate clearance and settlement of securities transactions. In adopting Section 17A, Congress set forth its finding that the prompt and accurate clearance and settlement of securities transactions, including the transfer of record ownership and safeguarding of securities and funds related to clearance and settlement activities, is necessary for the protection of investors and those acting on behalf of investors. 15 U.S.C. 78q-1(a)(1)(A), cited in *In re Depository Trust Co.*, SEC Release No. 34-47978, 2003 WL 21288541, at *1 (June 4, 2003) (the "June 4 SEC Order") (Ex. 1).[3]

In order to implement congressional policy, the SEC was vested with the authority and responsibility to regulate, coordinate, and direct the operations of all persons involved in processing securities transactions toward the goal of establishing a uniform national system for the prompt and accurate clearance and settlement of securities transactions in order to increase efficiency and reduce risk. 15 U.S.C. 78q-1(a)(1)(A)(i); June 4 SEC Order, at *6.

Congress expressly envisioned that the SEC's authority would extend to "every facet" of the securities handling process, including activities by clearing agencies, depositories, corporate issuers, and transfer agents. *See* S. Rep. No. 75, 94th Cong., 1st Sess. at 55 (1975) (Ex. 2); June 4 SEC Order, at *6. In that connection, pursuant to Section 17A(b)(3)(F) (15 U.S.C. 78q-1(b)(3)(F)), clearing agencies are required to adopt rules, subject to approval

---

[3] Each of these exhibits are contained in the accompanying Compendium as ("Ex. __").

4

by the SEC, designed to promote increases in efficiency and reduction in risk as mandated by Congress in adopting Section 17A.

DTC, NSCC and FICC are registered clearing agencies. *See* June 4 SEC Order, at *6 ("[a]s a registered clearing agency, DTC has adopted rules under Section 19(b) of the Act to act as a depository that operates a centralized system for the handling of securities certificates through book-entry movements."); *In re Nat'l Secs. Clearing Corp. Order Granting Registration and Statement of Reasons*, SEC Release No. 34-13163, 1977 WL 173551, at *1 (Jan. 13, 1977) (Ex. 3) (granting NSCC's application for registration as a clearing agency pursuant to section 17A of the Exchange Act) (the "January 13 SEC Release"). As such, these entities have adopted rules under Section 19(b) of the Exchange Act to fulfill their respective obligations in the national clearance and settlement system.

In carrying out its oversight functions, the SEC has recognized that DTC plays a "critical function" in the national clearance and settlement system.[4] More recently, the Financial Stability Oversight Council designated DTC, NSCC and FICC as Systemically Important Financial Market Utilities.[5]

Although Plaintiffs have sued DTCC and its subsidiaries, DTC, NSCC and FICC, and referred to these entities collectively as "DTC" or "DTCC," as demonstrated below, the four corporate defendants fulfill distinct functions and cannot properly be sued collectively founded upon conclusory allegations leveled against "DTC" or "DTCC."

---

[4] *See* June 4 SEC Order, at *6.

[5] *See* http://www.treasury.gov/initiatives/fsoc/designations/Pages/default.aspx.

### C.   DTCC.

DTCC is a New York corporation with its principal place of business in New York City.  DTCC was formed in 1999 upon the merger of DTC and NSCC and then acquired GSCC and MBSCC (which later became FICC).  DTCC is a holding company and did not engage in any of the transactions alleged in the Complaint.  The complaint is devoid of any specific allegations of any conduct undertaken by DTCC that would subject it to personal jurisdiction in Nevada or to liability under any cognizable theory of relief.  *See* Declaration of Peter J. Gleeson, dated August 29, 2013 ("Gleeson Decl.") (Ex. 4).

### D.   DTC.

DTC, a wholly-owned subsidiary of DTCC, is the nation's principal securities depository.  As a registered clearing agency, it is also an SRO.[6]  As set forth in the Gleeson Decl. (¶ 4), DTC is a limited purpose trust company established under New York law with its principal place of business in New York.  It does not do business in Nevada, nor did it engage in activities in or directed to Nevada with respect to the allegations of the complaint.  The complaint is devoid of any allegations of any conduct undertaken by DTC that would subject it to personal jurisdiction in Nevada.

Utilizing advanced automated systems for the "book-entry" transfer of securities, DTC operates a centralized system for the handling of securities deposited at DTC by the major banks and brokerage firms that constitute its "Participants." 15 U.S.C. 78s(b); June 4 SEC Order, at *6.  In accordance with its rules, DTC accepts deposits of securities from its Participants, credits those securities to the depositing Participants' accounts and effects

---

[6] The Exchange Act §78c(a)(26) ("The term 'self-regulatory organization' means any national securities exchange, registered securities association, or registered clearing agency...").

1  changes in beneficial ownership among its Participants' DTC accounts by computerized

2  book-entry movements pursuant to Participants' instructions.  *See, e.g.*, Rule 6 of DTC's

3  Rules, *cited in* June 4 SEC Order, at *6 n.54.  Securities deposited with DTC for book-entry

4  services are registered in DTC's nominee's name, Cede & Co., and are held in fungible bulk;

5
6  *i.e.*, each Participant or pledgee has a *pro rata* interest in securities of a given issue on

7  deposit at DTC credited to its account.  June 4 SEC Order, at *6.  DTC's book-entry system

8  makes the physical exchange and re-registration of paper indicia of ownership unnecessary,

9  thus facilitating the daily processing of millions of securities transactions involving billions

10 of shares.  June 4 SEC Order, at *6.

11         DTC's rules obligate and allow DTC to take instructions only from its Participants

12 (June 4 SEC Order, at *7) – DTC does not provide services or maintain accounts for issuers,

13 their shareholders (including the Plaintiffs herein) or the institutional or individual customers

14

15 of its Participants.

16         **E.     NSCC.**

17         NSCC is a wholly-owned subsidiary of DTCC.  As a registered clearing agency, it is

18 also an SRO.[7]  As set forth in the Gleeson Decl. (¶ 7), NSCC is a New York corporation with

19 its principal place of business in New York.  It does not do business in Nevada, nor did it

20 engage in activities in or directed to Nevada with respect to the allegations of the complaint.

21

22 The complaint is devoid of any allegations of any conduct undertaken by NSCC that would

23 subject it to personal jurisdiction in Nevada.

24         NSCC provides centralized clearance, settlement and information services for

25 virtually all broker-to-broker equity, corporate bond and municipal bond and other securities

26

27 _____

28 [7] *Id.*

transactions in the United States.  *See* January 13 SEC Release.  More particularly, NSCC guarantees and settles transactions among its member financial institutions in order to streamline the settlement process and reduce the cost and risk of moving funds and securities. As part of its services, on a daily basis NSCC nets the total buys and sells for each security for each of its member brokerage firms and then consolidates all debits and credits from the net positions into one final net money position for each firm, thus vastly simplifying the payment process.

**F.     FICC.**

FICC is a wholly-owned subsidiary of DTCC.  (*See* Gleeson Decl. ¶ 10).  As a registered clearing agency, it is also an SRO.[8]  As set forth in the Gleeson Decl. (¶ 10), FICC is a New York Corporation with its principal place of business in New York.  It does not do business in Nevada, nor did it engage in activities in or directed to Nevada with respect to the allegations of the complaint.  The complaint is devoid of any allegations of any conduct undertaken by FICC that would subject FICC to personal jurisdiction in Nevada.

In fact, FICC has no connection to the facts alleged in the complaint regarding BCIT's equity securities.  FICC clears and settles transactions in fixed income securities (government bonds and mortgage-backed securities) and does not engage in transactions regarding equity securities such as BCIT shares.  *In re Gov't Secs. Clearing Corp.*, SEC Release No. 34-47015, 2002 WL 31834437, at *1 (Dec. 17, 2002) (Ex. 5) (FICC is responsible for "messaging, reporting, netting and settlement mechanisms, standardized settlement practices, and coordinated cash and mark-to-market flows for fixed-income products").

---

[8] *Id.*

8

**G.    Plaintiffs' Suit Against FINRA and the DTCC Defendants.**

As set forth more fully in FINRA's moving brief:

Plaintiffs' suit challenges FINRA's regulatory decisions *not* to make an announcement that there had been a change in the CUSIP number assigned to Bancorp International Group's ("BCIT") stock certificates and the decision to remove BCIT on November 7, 2006 from the OTCBB for failure to quote or trade for 4 consecutive trading days.

According to the complaint, in 2005, BCIT was the victim of corporate identity theft with 41 unauthorized stock certificates issued between May and August 2005, representing approximately 245,000,000 shares of BCIT, allegedly illegally entered the market place. Comp. ¶ 21. Plaintiff alleges that there was a huge unexplained increase in trading volume and that the [DTCC] suspended clearing services for BCIT on August 11, 2005. Comp. ¶¶ 22-23. On August 31, 2005, the SEC announced a temporary suspension of trading in BCIT's shares, which lasted until September 14, 2005. Comp. ¶ 26.

BCIT then was involved in litigation that resulted in a settlement agreement after which BCIT requested a new CUSIP number for its stock certificates. Comp. ¶¶ 27-28.  Plaintiffs contend that, after this assignment of a new CUSIP number, FINRA should have announced this change to all of its members and to [DTCC.] Comp. ¶ 39(d).

Plaintiffs' complaint challenges FINRA's regulatory decisions under which it did not make an announcement that there had been a change in the CUSIP number assigned to BCIT stock certificates and BCIT's removal from OTCBB when it failed to comply with the listing standards.   Comp. ¶ 39(d)(e)(f) (g) and (j).

(DKT. 8 at * 7).

The complaint's allegations against the DTCC Defendants are premised on their alleged compliance with FINRA's directives:

- "FINRA would not allow DTCC" to "change or fully activate the new CUSIP Number … on its system." (Comp. ¶ 39(e)); *See also* Plaintiffs' opposition to FINRA's moving brief ("Plaintiffs' Opposition") (DKT. 21 at *4) ("…BCIT learned brokers transacting trades of BCIT would not change the CUSIP Number on their clients' accounts … indicating DTCC would not change or activate [the new BCIT CUSIP Number] because <u>FINRA would not allow DTCC to do so</u>" (emphasis added).);

- "DTCC participated in and <u>furthered</u> the conduct of FINRA" with respect to BCIT's shares. (Comp. ¶ 39(f) (emphasis added)); and

1
2
3

&bull; "TD Ameritrade and apparently DTCC are knowingly and illegally using the former and now inactive [BCIT CUSIP Number] and they claim the reason they are doing so is because of FINRA's alleged 'requirements.'" (Comp. ¶ 39(r)).

4  **III.   ARGUMENT**

5
     **A.   The DTCC Defendants Are Immune From Any Causes of Action Arising From Merely Complying With FINRA's Regulatory Decisions.**

6
7       As FINRA has established in its motion to dismiss, as an SRO it is absolutely

8  immune for conduct within the scope of its regulatory and general oversight functions.

9  *P'ship Exch. Sec. Co. v. NASD*, 169 F.3d 606, 608 (9th Cir. 1999) (holding that the NASD

10  was protected by absolute immunity for its conduct "under the aegis of the Exchange Act's

11  delegated authority" (internal quotation marks omitted)); *Sparta Surgical Corp. v. NASD*,

12  159 F.3d 1209, 1214-15 (9th Cir. 1998); *see also D'Alessio v. NYSE*, 258 F.3d 93, 105 (2d

13  Cir. 2001); *Standard Inv. Chartered, Inc. v. NASD*, 637 F.3d 112, 115 (2d Cir. 2011) (per

14  curiam), *cert. denied*, 132 S. Ct. 1093 (2012); *Dexter v. Depository Trust & Clearing Corp.*,

15  219 F. App'x 91 (2d Cir. 2007), *summarily aff'g*, 406 F. Supp. 2d 260 (S.D.N.Y. 2005); *DL*

16  *Capital Grp., LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 97 (2d Cir. 2005); *Barbara v.*

17
18  *NYSE*, 99 F.3d 49, 58 (2d Cir. 1996) (holding that the New York Stock Exchange, another

19  SRO, is "absolutely immune from damages claims arising out of the performance of its

20  federally-mandated conduct of disciplinary proceedings"); *Austin Mun. Sec., Inc. v. NASD*,

21
22  757 F.2d 676, 692 (5th Cir. 1985); *Am. Benefits Grp., Inc. v. NASD*, No. 99 CIV 4733 JGK,

23  1999 WL 605246, at *8 (S.D.N.Y. Aug. 10, 1999).

24       As FINRA observes in its moving brief, the doctrine of absolute immunity as applied

25  by the court in *Dexter* is directly applicable to facts and circumstances of this case.   In

26  *Dexter*, the plaintiff, a shareholder of a previously traded company sued NASD and DTC,

27  alleging that, similar to the allegations here, NASD acted in bad faith to profit from the

28

interests of its members when it made erroneous regulatory decisions setting the ex-dividend date for the distribution of proceeds from a litigation trust. *Dexter*, 406 F. Supp. 2d at 262. The plaintiff in *Dexter* also alleged that DTC participated in, and furthered, NASD's unlawful acts by complying with and relying on NASD's regulatory decisions. *Id.*

The court in *Dexter* dismissed the claims against NASD, holding that "NASD's decision to authorize (or not authorize) trading in certain securities is a core regulatory function that is covered by absolute immunity." *Dexter*, 406 F. Supp. 2d at 263 *citing, Sparta, supra,* 159 F.3d at 1215. The court ruled that the purpose of absolute immunity is to protect all conduct of an SRO from liability that "arises out of the discharge of its duties under the Exchange Act." *Id., citing, D'Alessio, supra,* 258 F.3d at 104. Therefore, the court found that even if NASD's conduct was incorrect, unlawful or undertaken with a bad motive it was nevertheless protected from suit. *Id., citing, Bernard v. Cnty. of Suffolk,* 356 F.3d 495, 502 (2d Cir. 2004).

The Dexter court then applied this immunity analysis to DTC:

> The NASD's regulatory decisions would be meaningless unless a clearing agency such as DTC carried out its directives. DTC's actions here were ministerial in nature. It would be illogical to clothe the NASD with absolute immunity for its regulatory decisions, and then to impose liability on a clearing agent that simply carried out its functions in obedience to, and in express reliance on, those decisions.
>
> …
>
> Under these circumstances, the DTC defendants cannot be liable for negligence or conversion. As a matter of law, the DTC defendants cannot have breached any duty of due care by executing a distribution in accordance with governing directives of the regulatory agency responsible for directing its activities.

*Id.*

As in *Dexter*, the claims against the DTCC Defendants in this case are premised upon DTC's compliance with the actions of FINRA. As noted above in Section II.G., the

complaint alleges that, in furtherance of its regulatory decisions, FINRA refused to allow the DTCC Defendants, among others, to recognize the new BCIT CUSIP Number. (Comp. ¶ 39(e)); *See also* Plaintiffs' Opposition at *4. The complaint also alleges that the DTCC Defendants complied with FINRA's directions. (*Id.* ¶ 39(r)). In essence, the complaint alleges that "DTCC participated in and furthered the conduct of FINRA." (*Id.* ¶ 39(f)). It follows, therefore, that, just as in *Dexter*, the DTCC Defendants cannot now be held liable for merely complying with FINRA's regulatory decisions.

Since the claims against FINRA are barred under the doctrine of absolute immunity, the claims against the DTCC Defendants are similarly infirm and should be dismissed in their entirety as a matter of law.

**B.      Plaintiffs Have No Private Right of Action Against the DTCC Defendants for Violation of the Exchange Act.**

Plaintiffs' claims must also be dismissed against the DTCC Defendants because there is no express or implied private right of action to sue SROs under the Exchange Act or the rules adopted thereunder. As noted above in Section II.B., DTC, NSCC and FICC are registered clearing agencies pursuant to Section 17A of the Exchange Act and regulated by the SEC pursuant to the Exchange Act to regulate their members under close SEC oversight. They are governed by Section 17A of the Exchange Act, which provides for the registration and regulation of clearing agencies. Enforcement of Section 17A is provided for in Section 19(g) of the Exchange Act, which states that SROs "shall comply ... and ... absent reasonable justification or excuse enforce compliance" with their own rules, the Exchange Act, and the rules and regulations promulgated thereunder. 15 U.S.C. § 78s(g)(1). Neither Section 19(g) nor Section 17A of the Exchange Act, nor any other provision of the federal securities laws expressly provides for a cause of action against DTC, NSCC, FICC or any SRO for misconduct in connection with carrying out their regulatory functions.

Courts have routinely found that no implied private right of action exists against SROs for discharging their duties under the Exchange Act. This bar extends with equal force to private actions asserted under the Exchange Act as well as state law claims related to a defendant's SRO activities. *Sparta*, 159 F.3d at 1213 ("[i]t is undisputed, even by [the plaintiff], that a party has no private right of action against an exchange for violating its own rules or for actions taken to perform its self-regulatory duties under the Act."); *MM&S Fin., Inc. v. NASD*, 364 F.3d 908, 910-11 (8th Cir. 2004) (holding that Exchange Act does not create private right of action against SRO for violations of the Exchange Act, or for breach of contract); *D'Alessio*, 258 F.3d at 100-02.[9]

For these reasons, Plaintiffs have no private express or implied right of action against the DTCC Defendants. The complaint, therefore, should be dismissed.

### C.   Plaintiffs' Failure to Exhaust Their Administrative Remedies Requires Dismissal Of the Complaint.

The complaint must also be dismissed because Plaintiffs have failed to exhaust their administrative remedies. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD*, 616 F.2d 1363, 1370-71 (5th Cir. 1980) (dismissing claims against NASD because plaintiff failed to exhaust administrative remedies; finding that exhaustion requirement avoids premature interruption of the administrative process "and allows the administrative agency to utilize its discretion, apply its expertise, correct its own errors, and handle its business expeditiously" (internal citations and quotations omitted).)

---

[9] *See also, Desiderio v. NASD*, 191 F.3d 198, 208 (2d Cir. 1999); *Feins v. American Stock Exchange, Inc.*, 81 F.3d 1215, 1216 (2d Cir. 1996); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980) ("[w]e believe the entire statutory scheme makes it 'highly improbable that 'Congress absentmindedly forgot to mention an intended private action'" in 15 U.S.C. § 78f(b) or § 78o-3(b)(6)) (citations omitted); *FDIC v. NASD*, 582 F. Supp. 72, 74-75 (S.D. Iowa); *aff'd*, 747 F.2d 498 (8th Cir.1984); *Gustafson v. Strangis*, 572 F. Supp. 1154 (D. Minn. 1983) (dismissing a complaint against NASD and noting that "implied causes of action undermine the concept of self-regulation, a central component of the [Exchange] Act").

The complaint in this case centers on alleged damages that flow from FINRA's regulatory decisions to not announce to its members and to DTC that the CUSIP Number for BCIT shares had changed.  As set forth in greater detail in the FINRA Briefs, it is well-established that BCIT's challenge to the manner in which FINRA's rules and/or the Exchange Act are interpreted and applied by FINRA must first be determined by the SEC. (DKT. 8 at *16-18).  The same holds true for the DTCC Defendants.  And, to the extent that BCIT challenges DTC's global lock with respect to its shares, the Exchange Act provides, in principle, that BCIT can challenge that determination by appeal to the SEC.  *See* Exchange Act Section 19(d)(1)-(2) (stating that an SRO action that prohibits or limits any person with respect to access to services offered by the SRO "shall be subject to review" by the SEC.).

The claims asserted in this action are squarely within the SEC's oversight, which is charged by Congress with overseeing "every facet" of the securities handling process.[10] Congress has thus foreclosed judicial review of issues related to the application of FINRA's rules and the Exchange Act until the SEC has had an opportunity to analyze Plaintiffs' claims.  15 U.S.C. § 78y(c)(1) ("No objection to an order or rule of the Commission, for which review is sought under this section, may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so."); *see also First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 692 (3d Cir. 1979) (finding lack of jurisdiction over complaint seeking monetary relief and injunction against NASD); *Charles Schwab & Co. v. FINRA*, 861 F. Supp. 2d 1063, 1069 (N.D. Cal. 2012) (holding that "the failure to exhaust administrative remedies is jurisdictional"); *Rudolph v. Fulton*, 178 Cal. App. 2d 339, 342-43 (Cal. Ct. App. 1960) (exhaustion of administrative remedies is a jurisdictional

---

[10] *See* Section II.B., *supra*.

14

prerequisite to judicial review even where plaintiff's suit asserts it has nothing to do with NASD's federal duties).

Plaintiffs have not attempted to pursue their grievances concerning FINRA's or DTC's alleged violations of their respective Rules and the Exchange Act with the SEC as is required by the Exchange Act.  15 U.S.C. § 78s(h).  Accordingly, this Court lacks subject matter jurisdiction over this case, and it should be dismissed.

**D.   Plaintiffs' Claims Against the DTCC Defendants are Barred by the Applicable Statute Of Limitations.**

As explained more fully in FINRA's moving brief, all of Plaintiffs' claims are time-barred under Nevada state law.  (DKT. 8 at *13-16).  Plaintiffs' complaint asserts various common law and statutory torts with various statutes of limitation under state law, the longest of which is 6 years.  From the face of the complaint, the latest possible date that Plaintiffs' discovered its alleged injuries is November 7, 2006.  This is <u>more than six years</u> before the date the Plaintiffs filed their complaint in March 2013 and all of their claims are time-barred.  Therefore, the complaint must be dismissed because Plaintiffs have not stated and cannot state valid causes of action against the DTCC Defendants.

**E.   There is no Basis for Jurisdiction Over the DTCC Defendants.**

The sole jurisdictional allegation as against any of the DTCC Defendants is Plaintiffs' naked assertion that "[a]t all times pertinent hereto, DTC was doing business in Nevada." (Comp. ¶ 11).  As shown in the accompanying declaration, however, none of the DTCC Defendants are licensed to do business in Nevada, have offices in Clark County or anywhere else in Nevada, sell or lease property in Nevada, or have any Nevada mailing address.  (*See* Gleeson Decl. ¶¶ 3, 6, 9, 11).

As the DTCC Defendants clearly have no physical presence in Nevada, then, Plaintiffs' "doing business" allegations could be sufficient only if Plaintiffs could show that

1   those Defendants purposefully availed themselves of the privilege of conducting business in

2   Nevada.  *See Hoag v. Sweetwater Int'l*, 857 F. Supp. 1420, 1426 (D. Nev. 1994) (non-

3   resident's contacts with forum contemplated "'continuing and extensive involvement'" in

4   Nevada) (citation omitted).  No such availment is or could be shown here.

5       Plaintiffs, therefore, have not met and cannot meet their burden of establishing

6   personal jurisdiction over the DTCC Defendants.  For this reason as well, the complaint

7

8   should be dismissed.

9       **F.    Plaintiffs Have Failed to State the Essential Elements of Any of the
            Causes of Action Against the DTCC Defendants.**

10

11      In the unlikely event that this Court does not find that Plaintiffs' common law causes

12  of action are preempted, as FINRA also observes, they should still be dismissed under Rule

13  12(b)(6).[11]  (*See* DKT. 8 at * 3-4).

14          *i.    Deceptive Trade Practices*

15      In their Eighth Claim For Relief, Plaintiffs allege a "deceptive trade practice" in

16  purported violation of the Nevada Unfair Trade Practice Act ("NUTPA") (NRS Ch. 598).

17

18  (Comp. ¶¶ 83-87).  Leaving aside the vague and conclusory nature of these allegations, it is

19

20  [11]  The DTCC Defendants believe that New York law, rather than Nevada, governs the state law

21  issues in this action.  Applying Nevada's choice-of-law principles supports applications of New York
    law.  *See MRO Commc'ns, Inc.  v. AT&T Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999).  Here, New York

22  State has an "overwhelming interest," *Motenko v. MGM Dist., Inc.*, 112 Nev. 1038, 1041-42 (1996),
    in the action against the DTCC Defendants.

23
    All of the DTCC transactions occurred in New York and the DTCC Defendants are New York
24  corporations with their principal places of business in New York.  Indeed, New York is the country's
    financial center, where the major exchanges and securities trading activities are located.  In addition,
25  the alleged conduct giving rise to Plaintiffs' alleged injury occurred in New York.  *See See id.;
    Telequest, Inc. v. Norton Cattle Co.*, 189 F.3d 474, 1999 WL 561089, at *1 (9th Cir. July 30, 1999),
26  *table op. reported at*, 189 F.3d 474 (Ex. 28) (holding that Oregon had an "overwhelming interest" in
    the proceeding under Nevada's choice of law rules).  Regardless of whether New York or Nevada law
27  applies to Plaintiffs' state law claims, however, as we show below, the claims cannot withstand a
    motion to dismiss.
28

16

clear that the DTCC Defendants do not fall within the purview of the NUPTA.  The statute

applies to victims of "consumer fraud" (N.R.S. 41.600) and other fraudulent consumer and

activites (N.R.S. 598.0915, 598.0917 and 598.0918).  The DTCC Defendants are not alleged

to sell goods or services to the general public, let alone the Plaintiffs, and cannot conceivably

be covered by NUPTA.

        *ii.*    *Intentional Interference with Contract and Prospective Economic Advantage*

In their Tenth and Eleventh Claims For Relief, Plaintiffs allege that the unspecified

conduct of all Defendants somehow constitutes "interference" with unspecified contracts and

prospective economic advantages of the Plaintiffs.  (Comp. ¶¶ 94-103).  These conclusory

allegations are wholly insufficient to state any claims for interference with contract or

prospective economic advantage, let alone to state such a claim against the DTCC

Defendants.

Plaintiffs have failed to satisfy the elements of a claim for intentional interference

with contractual relations (*Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989); *Lake at

Las Vegas Investors Grp., Inc. v. Pacific Malibu Dev. Corp.*, 867 F. Supp. 920, 925 (D. Nev.

1994), *aff'd,* 78 F.3d 593 (9th Cir. 1996)); *see also Israel v. Wood Dolson Co.*, 1 N.Y.2d 116,

120 (1956) (listing elements of cause of action under New York law as (1) the existence of a

valid contract between plaintiff and a third party, (2) defendant's knowledge of that contract,

(3) defendant's intentional procuring of the breach of that contract, and (4) damages); *Foster

v. Churchill*, 87 N.Y.2d 744, 749-50 (1996)), as well a claim for intentional interference with

prospective economic advantage (*In re Sovereign Partners*, 179 B.R. 656, 663 (Bankr. D.

Nev. 1995) (internal citations omitted), *aff'd,* 110 F.3d 70 (9th Cir. 1997); *see also Kronos,

Inc. v. AVX Corp.*, 595 N.Y.S.2d 931, 934 (1993) (same)).  Neither Plaintiff has pleaded the

existence of a valid contract to which they are parties.  Nor have they pleaded facts that

would demonstrate that the DTCC Defendants (1) knew of any such contract; (2) interfered with any such contract; or (3) actually disrupted any such contract.  Similarly, Plaintiffs have not pleaded any facts to show any of them had any prospective business advantage with a third party, much less that the DTCC Defendants knew of such relationship and intended to harm it.  These fatal deficiencies mandate the dismissal of the Tenth and Eleventh Claims For Relief.  *See J.J. Indus., LLC v. Bennett*, 71 P.3d 1264 (Nev. 2003) (reversing judgment for intentional interference with a real estate contract where there was no evidence that defendant induced the breach); *Nat'l Right to Life Political Action Comm. v. Friends of Bryan*, 741 F. Supp. 807, 817 (D. Nev. 1990) (dismissing claim for intentional interference with contract where there was no evidence that that "[d]efendant's actions were the product of an improper or unjustified motive"); *see also Lama Holding Co. v. Smith Barney Inc.*, 646 N.Y.S.2d 76, 82 (1996) (affirming dismissal of cause of action for tortious interference with contract where plaintiffs alleged that the defendant "'wrongfully interfered with and frustrated the performance of plaintiff's agreement'" but plaintiff failed to allege sufficient facts that the defendant intentionally procured a breach of contract or that such a breach occurred) (citation omitted).

### iii.    Conspiracy

Plaintiffs' vague and inchoate allegations in their Thirteenth Claim For Relief are insufficient to establish a conspiracy claim under Nevada law.  (Comp. ¶¶ 108-111).

Under Nevada law, "[a]n actionable civil conspiracy 'consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consd. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998).

Here, plaintiffs have done no more than assert a wholly conclusory conspiracy claim without pleading these essential elements.[12]   Moreover, a conspiracy claim must be coupled with a valid tort claim.   *See Eikelberger v. Tolotti*, 611 P.2d 1086, 1088-89 (Nev. 1980) ("[I]t is necessary for the act in furtherance of the conspiracy to constitute an actionable tort").  Here, of course, plaintiffs have not pled any viable tort claim.

     *i.*   *Racketeering*

Plaintiffs also allege that the Defendants' conduct constitutes "racketeering" under N.R.S. 207.350-520.  To constitute actionable statutory "racketeering," a defendant must have engaged in "racketeering activity."  N.R.S. 207.400.  "Racketeering activity" means engaging in at least two crimes related to racketeering that have the same or similar pattern, intents or results.  *Id.* 207.390.  Further, the alleged crime must be perpetrated against the plaintiff.  *See Allum v. Valley Bank*, 849 P.2d 297, 301-02 (Nev. 1993).  The alleged injury must also be proximately caused by the criminal acts.  *See Brown v. Fed. Sav. & Loan Ins. Corp.*, 777 P.2d 361, 365 (Nev. 1989).

The complaint does not allege any conduct which constitutes criminal activity, let alone a pattern of criminal activity constituting at least two crimes directed at Plaintiffs. Plaintiffs also do not assert any individualized allegations that specific acts of the DTCC Defendants were the proximate cause of Plaintiffs' alleged racketeering injuries.

---

[12] Plaintiffs allege that:

> The conduct Defendants, and each of them, and others not yet known to Plaintiffs, constitutes an agreement to engage in the conduct described herein and in furtherance of such agreement, to engage in an unlawful conspiracy, employing, *inter alia*, means of fraudulent documents, misrepresentations and untrue statements to third parties, and to Plaintiffs, among other things.

Comp. ¶ 109 (emphasis in original).

19

     *iv.*  *Conversion*

  Without differentiating between BCIT and Caron, Plaintiffs have attempted to allege a cause of action for conversion (the Seventh Claim For Relief).  (Comp. ¶¶ 78-82).  The legal positions of BCIT and Caron as to this and their other causes of action are very different.  This is because BCIT and Caron – a BCIT shareholder – do not have the same rights and interests.  In any event, neither BCIT nor Caron can demonstrate a conversion of their property.

  Conversion exists only where there is "a distinct act of dominion wrongfully exerted over another's *personal property* in denial of, or inconsistent with his title or rights therein or in derogation, exclusion or defiance of such title or rights." *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958) (emphasis added); *Hart v. City of Albany*, 706 N.Y.S.2d 535, 536 (3d Dep't 2000) ("'[C]onversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.'") (citation omitted).

  BCIT has no standing to allege conversion of BCIT shares.  It admits that it has no ownership rights in the allegedly "converted" shares, stating, "... when the <u>lawful BCIT shareholder</u> demands the certificate for BCIT shares, FINRA and DTCC refuse to deliver such shares.  This ... constitutes conversion..."  (Comp. ¶ 39(n) (emphasis added)).  BCIT does not and cannot dispute that an issuer has no further ownership interest in shares it has sold into the open market. *See* June 4 SEC Order, at *7 (June 2003).  BCIT, therefore, has no ownership rights in the stock certificates at issue.

  Nor can Caron maintain a claim for conversion against the DTCC Defendants.  The physical stock certificates on deposit at DTC are *not* "personal property" owned by Caron, nor have they ever been.  The BCIT certificates on deposit at DTC are registered in the name

20

of DTC's nominee, Cede & Co., in which legal ownership is vested.  *See* June 4 SEC Order, at *6.  Caron never had ownership or possession of these Cede & Co. certificates, nor does he allege to the contrary.  Thus, Caron's claim cannot be properly cast in terms of conversion of his "personal property."  *Wantz*, 326 P.2d at 414; *Hart*, 706 N.Y.S.2d at 536; June 4 SEC Order, at *6.

        *v.*     *The Duty of Good Faith and Fair Dealing*

Plaintiffs' Sixth Claim For Relief states that "Defendants, and each of them, had a duty to exercise good faith and deal fairly with Plaintiff … and breached said duty … by performing the acts alleged herein."  (Comp. ¶¶ 74-75).

A claim for breach of the implied covenant of good faith and fair dealing can only arise from the execution or performance of a <u>contract</u>.  *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 910 (D. Nev. 1993); *see also Aluevich v. Harrah's*, 660 P.2d 986, 987 (Nev. 1983); *Four Winds of Saratoga Inc. v. Blue Cross & Blue Shield*, 660 N.Y.S.2d 236, 237 (3d Dep't 1997) ("There being no contractual relationship, neither can there be any 'covenant of good faith and fair dealing' implied which itself is based on the existence of a legal contractual obligation.").  Here, of course, there is no alleged contract between Plaintiffs and the DTCC Defendants.

Nor can Plaintiffs rescue this cause of action by an attempt to convert it to a tort-based claim.  A tort action for breach of the implied covenant of good faith and fair dealing "is limited to 'rare and exceptional' cases."  *Cascade Inv., Inc. v. Bank of Am., N.A., S.A.*, No. CV-N-99-559-ECR (RAM), 2000 WL 1842945, at *1 (D. Nev. Sept. 29, 2000) (Ex. 31).  Furthermore, the tort "requires a special element of reliance or fiduciary duty" such as employment, bailment, insurance, partnership or franchise relationship.  *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 263 (Nev. 1997); *see also Drepaul v. Allstate Ins. Co.*,

749 N.Y.S.2d 439, 441 (2d Dep't 2002) ("The use of familiar tort language to support a claim for breach of the implied covenant of good faith and fair dealing does not change the cause of action to a tort claim in the absence of an underlying tort duty sufficient to support a claim for punitive damages."); *Batas v. Prudential Ins. Co. of Am.*, 724 N.Y.S.2d 3, 7 (1st Dep't 2001) ("[O]ther than in exceptional cases, a cause of action sounding in tort, whether for fraud or otherwise, cannot depend upon a fiduciary or other character of the relationship created by the contract alone, for no such relationship exists."). No such relationship between Plaintiffs and the DTCC Defendants exists. As shown above, the DTCC Defendants do not have <u>any</u> relationship with Plaintiffs.

> ### vi.   Negligence

Plaintiffs' Fourth Claim For Relief for negligence (Comp. ¶¶ 61-65) fails to state a cause of action in that they have not alleged and cannot allege any duty owed specifically to them by any of the DTCC Defendants. *See, e.g., Scialabba v. Brandise Constr. Co.*, 921 P.2d 928, 930 (Nev. 1996); *see also, e.g., Irizarry v. Heller*, 943 N.Y.S.2d 606 (2d Dep't 2012). In addition, DTC's only duties are to its Participants, it is required to act at their direction and neither Plaintiff is a DTC participant. *See* June 4 SEC Order, at *6; U.C.C. §§ 8-506-508; U.C.C. § 8-507 cmt. 3 ("One of the basic principles of the indirect holding system is that securities intermediaries owe duties only to their own customers."); U.C.C. § 8-102 (defining a "securities intermediary" as "a clearing corporation.")

> ### vii.   Fraud and Statutory and Common Law Misrepresentation

Plaintiffs' fraud as well as statutory and common law misrepresentation causes of action (Comp. ¶¶ 45-50, 51-60 and 66-71) fail because they do not comply with the pleading requirements set forth in Rule 9(b). Rule 9(b) applies to all cases where the gravamen of the claim is fraud, even if the theory supporting the claim is not specifically labeled fraud. *See*

22

*Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *In re Stac Elecs. Secs. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996) (citing *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994)); *see also Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 796 (9th Cir. 1996) (applying Rule 9(b) to pleading of state law causes of action).

Rule 9(b) requires that when fraud is pleaded, "the circumstances constituting the fraud . . . shall be stated with particularity." In cases of alleged misrepresentations, the "pleadings must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994); *see also In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

Plaintiffs have failed to allege that the DTCC Defendants made a single misrepresentation to Plaintiffs, or how such unenumerated misrepresentations defrauded Plaintiffs. Moreover, Plaintiffs have not alleged the precise time, place, or nature of the false statements allegedly made by the DTCC Defendants with respect to each of BCIT and Caron. Nor have they made, as they must, ". . . specific and separate allegations against each defendant." Moore's Federal Practice, § 9.03(f); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).[13]

### G.    Caron Lacks Standing to Sue for BCIT's Alleged Damages

Plaintiff Caron, as a shareholder of BCIT does not have standing to sue for damages allegedly suffered by the corporation. As recently stated by Judge Du:

---

[13]   Because Plaintiffs have failed to state a claim for relief on any of their substantive causes of action, their request for injunctive and declaratory relief (Comp. ¶¶ 43, 104-107), should be denied as well. *See State Farm Mut. Auto. Ins. Co. v. Jafbros Inc.*, 860 P.2d 176, 178 (Nev. 1993) (It is axiomatic that a court cannot provide a remedy unless it has found a wrong"); *see also O Zon Inc. v. Charles*, 272 F. Supp. 2d 307, 312 (S.D.N.Y. 2003); *Paduano & Weintraub LLP v. Wachovia Secs.*, 185 F. Supp. 2d 330, 333-334 (S.D.N.Y. 2002) (no declaration absent actual case or controversy); *Douglas v. Don King Prods., Inc.*, 736 F. Supp. 223, 225 (D. Nev. 1990) (declaratory relief unavailable in controversies involving only "future or speculative rights.")

23

The "shareholder standing rule" provides "a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Zurich Am. Ins. Co. v. Nat'l Fire & Marine Ins. Co.*, No. 2:12-CV-00264, 2012 U.S. Dist. LEXIS 99934, 2012 WL 2934756, at *2 (E.D. Cal. July 18, 2012) (citing *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336, 110 S. Ct. 661, 107 L. Ed. 2d 696 (1990); *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983) ("To have standing to maintain an action, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation. A shareholder must be injured directly and independently of the corporation.")).

*Tsutsumi v. Advanced Power Techs., Inc.*, Case No. 2:12-cv-01784-MMD-VCF, 2013 U.S. Dist. LEXIS 69221, at *11 (D. Nev. May 10, 2013). Therefore, Caron is barred from suing the DTCC Defendants to the extent any of the causes of action attributable to him in the complaint are based on BCIT's alleged damages.

24

IV.   **CONCLUSION**

   Based on the foregoing, the complaint should be dismissed with prejudice as against the DTCC Defendants, together with such other and further relief as the Court deems appropriate.

   Dated:  August 29, 2013

                              LAXALT & NOMURA, LTD.

                   By:  _____
                              Daniel T. Hayward, Esq.
                              Nevada State Bar No. 5986
                              9600 Gateway Drive
                              Reno, Nevada  89521

                              *Attorneys for Defendants*
                              *The Depository Trust Company,*
                              *The Depository Trust & Clearing Corporation,*
                              *National Securities Clearing Corporation, and*
                              *Fixed Income Clearing Corporation*

25

## CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, nor interested in, this action. On this 29th day of August, 2013, I caused to be served a true and correct copy of the forgoing *MOTION TO DISMISS AND COMPENDIUM OF EXHIBITS OF DEFENDANTS THE DEPOSITORY TRUST COMPANY, THE DEPOSITORY TRUST & CLEARING CORPORATION, NATIONAL SECURITIES CLEARING CORPORATION, AND FIXED INCOME CLEARING CORPORATION* by method indicated

XX            by Court's CM/ECF Program

And addressed to the following:

Michael J. Morrison
1495 Ridgeview Drive, Suite 220
Reno, NV 89519
*Attorneys for Plaintiff, Bancorp International Group*

William E. Peterson, Esq.
Suellen Fulstone, Esq.
Snell & Wilmer L.L.P.
50 West Liberty Street, Suite 510
Reno, NV 89501

Betty G. Brooks (*pro hac vice admission pending*)
Office of General Counsel
FINRA, Inc.
1735 K Street, N.W.
Washington, D.D. 20006
*Attorneys for Defendant, Financial Industry Regulatory Authority, Inc.*

_____
An employee of Laxalt & Nomura, Ltd.

LAXALT & NOMURA,
ATTORNEYS AT LAW
9600 GATEWAY DRIVE
RENO, NEVADA 89521