1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                                 DISTRICT OF NEVADA

8
     BANCORP INTERNATIONAL GROUP et al.,        )
9                                               )
                      Plaintiffs,               )
10                                              )
          vs.                                   )        3:13-cv-00170-RCJ-WGC
11                                              )
     FINANCIAL INDUSTRY REGULATORY              )        **ORDER**
12   AUTHORITY et al.,                          )
                                                )
13                    Defendants.               )
                                                )

14

15          This is a removed diversity case arising out of the acts and omissions of the Financial

16   Industry Regulatory Authority ("FINRA") and other regulatory organizations.  FINRA has moved

17   to dismiss, and the other four Defendants have separately moved to dismiss.  For the reasons

18   given herein, the Court grants the motions.

19   **I.      FACTS AND PROCEDURAL HISTORY**

20          Plaintiffs Bancorp International Group, inc. ("Bancorp") and Douglas R. Caron (a

21   stockholder of Bancorp) allege malfeasance and nonfeasance on the part of FINRA and four

22   other entities.  Between May and August 2005, some person or persons allegedly issued 245

23   million shares of counterfeit Bancorp stock certificates. (*See* Compl. ¶ 21, Apr. 5, 2013, ECF no.

24   1-1).  The introduction of these false shares coincided with an unexplained increase in trading

25   volume of over 2 billion shares, which is 424 times the total of apparent shares and 1892 times

1  the total of legitimate shares. (*See id.* ¶ 22).  As a result, Defendant Depository Trust and

2  Clearing Corp. ("DTCC") suspended clearing services for Bancorp on August 11, 2005 (the

3  "Global Lock"). (*Id.* ¶ 23).  The SEC announced a temporary suspension of trading on Bancorp's

4  stock on August 31, 2005 to last until September 15, 2005. (*See id.* ¶ 26).  In a separate case then

5  pending, a judge of the U.S. District Court for the District of Oklahoma ordered that Bancorp

6  issue 245 million shares to replace the counterfeit shares and that various parties would

7  compensate Bancorp with cash damages, as part of a settlement agreement. (*See id.* ¶ 27).

8  Bancorp was required to amend its articles of incorporation with the Nevada Secretary of State in

9  order to comply, which it did. (*See id.* ¶ 39(c)–(d)).  However, FINRA failed to announce to

10  DTCC and its members the change to the CUSIP numbers of Bancorp's stock, resulting in that

11  brokers nationwide also did not change the CUSIP numbers. (*See id.* ¶ 39(e)).  Bancorp's stock

12  began trading publicly again on November 7, 2006, but the SEC halted trading after thirty

13  minutes due to "clerical errors" in the CUSIP numbers. (*See id.* ¶ 39(j)).  After four days, the

14  SEC delisted Bancorp's stock from the OTCBB market. (*Id.*).  Plaintiffs allege that FINRA failed

15  and continues to fail to sort out the CUSIP SNAFU, and that its failure to do so constitutes

16  actionable malfeasance or nonfeasance.

17      Plaintiffs sued FINRA, DTCC, Depository Trust Co., National Securities Clearing Corp.,

18  and Fixed Income Clearing Corp. in state court on thirteen nominal causes of action: (1)

19  injunctive relief;[1] (2) fraud; (3) statutory misrepresentation;[2] (4) negligence;[3] (5) common law

20

21

---

22      [1]This is not a separate cause of action but a prayer for relief.

23      [2]Plaintiffs identify no statute, so the Court interprets this cause of action to be duplicative
of the common law fraud claim.

24

25      [3]The Court interprets this cause of action to be for economic harm caused by professional
negligence, as no personal injury or death is alleged.

1    misrepresentation;[4] (6) breach of the implied duty of good faith and fair dealing; (7) conversion;

2    (8) deceptive trade practices; (9) racketeering; (10) interference with contractual relations; (11)

3    interference with prospective economic advantage; (12) declaratory judgment;[5] and (13) civil

4    conspiracy.  Defendants removed and have moved to dismiss.

5    **II.      LEGAL STANDARDS**

6          Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

7    claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

8    what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

9    (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

10   that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

11   12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

12   F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for

13   failure to state a claim, dismissal is appropriate only when the complaint does not give the

14   defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

15   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is

16   sufficient to state a claim, the court will take all material allegations as true and construe them in

17   the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

18   Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

19   conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

20   *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

21   with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own

22   case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79

23   _____

24        [4]This cause of action is synonymous with the fraud claim, as the *mens rea* alleged
     hereunder is intent.

25        [5]This is not a separate cause of action but a prayer for relief.

1   (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff

2   pleads factual content that allows the court to draw the reasonable inference that the defendant is

3   liable for the misconduct alleged.").  In other words, under the modern interpretation of Rule

4   8(a), a plaintiff must not only specify a cognizable legal theory (*Conley* review), but also must

5   plead the facts of his own case so that the court can determine whether the plaintiff has any

6   plausible basis for relief under the legal theory he has specified, assuming the facts are as he

7   alleges (*Twombly-Iqbal* review).

8        "Generally, a district court may not consider any material beyond the pleadings in ruling

9   on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

10  complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

11  *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

12  whose contents are alleged in a complaint and whose authenticity no party questions, but which

13  are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

14  motion to dismiss" without converting the motion to dismiss into a motion for summary

15  judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule

16  of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

17  *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

18  considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

19  summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.

20  2001).

21  **III.   ANALYSIS**

22       **A.    Absolute Immunity**

23       First, FINRA first correctly notes that as a self-regulatory organization, i.e., the successor

24  entity to NASD, it is absolutely immune from money damages for any acts or omissions related

25  to its regulatory function. *See P'ship Exch. Sec. Co. v. Nat'l Assn. of Sec. Dealers, Inc.*, 169 F.3d

1   606, 608 (9th Cir. 2009); *Sparta Surgical Corp. v. Nat'l Assn. of Sec. Dealers, Inc.*, 159 F.3d

2   1209, 1213 (9th Cir. 1998) ("We . . . hold that a self-regulatory organization is immune from

3   liability based on the discharge of its duties under the [Securities] Exchange Act [of 1934].").  In

4   opposition, Plaintiffs argue that the facts of the present case are more egregious than the facts of

5   the cited cases.  But the respective merits of the cases are inapposite to whether FINRA was

6   acting in its regulatory capacity in both instances, and it clearly was.

7         **B.**     **No Private Cause of Action**

8       Second, FINRA is correct that, even if not covered by absolute immunity, there is no

9   private cause of action to compel or prevent actions by FINRA related to its regulatory authority.

10   *See Sparta Surgical Corp.*, 159 F.3d at 1213 ("It is undisputed, even by [the plaintiff], that a

11   party has no private right of action against an exchange for violating its own rules or for actions

12   taken to perform its self-regulatory duties under the [Securities Exchange] Act [of 1934].  Thus,

13   to the extent that [the plaintiff] seeks private relief for NASD or NASDAQ's breach of their own

14   rules, its claims are barred." (citation omitted)).  All claims here arise out of FINRA's

15   performance of its self-regulatory duties.  Again, Plaintiffs' arguments in opposition that the facts

16   of the present case are more egregious than the facts of the cited cases are unavailing.

17         **C.**     **Statutes of Limitations**

18       Third, all Defendants ask the Court to dismiss under the statutes of limitations.  The

19   Court grants the motions on this basis, as well.  The last act or omission complained of occurred

20   on November 7, 2006, when FINRA delisted Bancorp's stock, over six years before Plaintiffs

21   filed the present lawsuit in state court on March 7, 2013. (*See* Compl. 1, 12).  The parties do not

22   appear to dispute that Nevada law governs the statutes of limitations in this diversity action.  The

23   conversion, fraud, breach of fiduciary duty, and interference claims have three-year statutes of

24   limitations. *See* Nev. Rev. Stat. § 11.190(3)(c) (property torts such as conversion, interference

25   with contractual relations, and interference with prospective economic advantage); *id.*

1   § 11.190(3)(d) (fraud-based torts, including breach of fiduciary duty); *Stalk v. Mushkin*, 199 P.3d

2   838, 841–42 (Nev. 2009) (holding that business-interference-type claims are a species of

3   property torts for the purpose of the statute of limitations); *Nev. State Bank v. Jamison Family*

4   *P'ship*, 801 P.2d 1377, 1382 (Nev. 1990) (holding that a breach of fiduciary duty is a species of

5   fraud for the purpose of the statute of limitations).  The negligence claim, which is likely

6   intended to be a professional negligence claim, as no physical injury or death but only economic

7   harm is alleged, must be viewed as a species of property tort with a three-year statute of

8   limitations. *See* Nev. Rev. Stat. § 11.190(3)(c).  The common law civil conspiracy and deceptive

9   trade practices claims have four-year statutes of limitations. *See* Nev. Rev. Stat. § 11.220; *id.*

10   § 11.190(2)(d).  The RICO claim has a five-year limitations period. *See id.* § 207.520.  The

11   implied covenant of good faith and fair dealing claim, which is not sufficiently pled in any case,

12   because no contract is pled, would have a four- or six-year statute of limitations, depending upon

13   whether the underlying contract were oral or written. *See id.* § 11.190(1)(b), (2)(c).  The facts

14   giving rise to the running of these statutes of limitation appear on the face of the Complaint,

15   obviating any need for Defendants to separately prove the statutes have run. *See Jablon v. Dean*

16   *Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("If the running of the statute is apparent on the

17   face of the complaint, the defense may be raised by a motion to dismiss.").

18        As a final matter, the Court notes that the District of Oklahoma court presumably retains

19   jurisdiction to enforce its previous order, which order Plaintiffs cite so widely in their briefs.

20   That is the route for Plaintiff to seek a remedy for any ongoing harm arising out of failure to

21   comply with that order.

22   ///

23   ///

24   ///

25   ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 8, 34) are GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 10th day of January, 2014.

_____
ROBERT C. JONES
United States District Judge